# Exhibit 1

IXG

Investment Exchange Group, LLC
Corporate Office: 650 South Cherry Street, Suite 920 Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448 www.ixg1031.com
Nationwide Toll Free: 800.908.1031

April 5, 2005

Liz Greco
Chicago Title of Colorado, Inc.
2401 E. 2nd Avenue, Suite 150
Denver, Colorado 80206

Re: Florida Station, LLC - Relinquished Property
Exchange No. 10-0513574
Escrow No. 1406362
Property Address: 10611 W. Florida Avenue, Lakewood, Colorado

Dear Liz:

Please be advised that Florida Station, LLC (Exchanger) is participating in a Section 1031 tax deferred exchange and that Investment Exchange Group, LLC (IXG) will be involved in your closing as the Qualified Intermediary. In order to effectuate a valid exchange for our Exchanger, we request that you comply with the following instructions.

Enclosed you will find the following documents:

1) An "Exchange Agreement" between IXG and Exchanger. Please have the Exchanger initial on page 8 and sign on page 11.
2) An "Assignment of Contract to Buy & Sell Real Estate (Commercial) for Exchange Property". The Exchanger must sign this document as part of the closing documents.
3) A "Notice of Assignment of Contract to Buy & Sell Real Estate (Commercial)." The closing agent **must sign** this document as part of the closing documents and provide a copy to the Buyer.
4) Wire Instructions for the transfer of the sale proceeds to our trust account. Please fax this document when you generate the wire.

Specific instructions related to this exchange:

1) We request the exchange fee of $1000 be paid as part of the closing via a separate check payable to Investment Exchange Group, LLC.

2) Our exchange agreement calls for direct deeding, i.e., the deed will pass directly from Florida Station, LLC to Nancy T. Magoon Trustee.

3) On the closing statement and/or HUD and escrow instructions, the "Seller" should be "Investment Exchange Group, LLC" and the "Exchanger" should be "Florida Station, LLC ". IXG, as Qualified Intermediary, will sign these documents as the Seller.

4) If there are any prepaid rents or security deposits due to the buyer, we request that they be paid outside of closing. However, if the parties are adamant that these items be reflected on the closing statement, please notify us immediately and we will advise the Exchanger of the potential tax consequence.

5) On the closing statement and/or HUD, we request that the proceeds transferred to Investment Exchange Group, LLC be labeled as "Exchange credit transferred to IXG."

6) We request a draft of the closing statement and/or HUD, escrow instructions (if any), and conveyance deed for our review, and a reasonable amount of time to review these documents, BEFORE copies are provided to the Buyer and Seller for signature.

7) The Exchanger must approve and sign all documents related to this closing before any transfer and/or use of the funds occurs.

8) If there is seller financing involved in this transaction, please notify us immediately for further instructions.

9) Please be sure to note the closing date on the final closing statement.

10) A representative of Investment Exchange Group will need to sign the settlement statement for Investment Exchange Group, LLC.

After closing, please immediately return the following documents to us, along with our exchange fee:

- **Final Settlement Statement signed by all parties**
- **Signed Exchange Agreement**
- **Signed Assignment**
- **Signed Notice of Assignment**

Thank you for your assistance with this closing. If you have any questions, please give us a call.

Very truly yours,

Daniel E. McCabe, Esq., CES
President

Enclosures



Investment Exchange Group, LLC
Corporate Office: 650 South Cherry Street, Suite 920 Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448 www.ixg1031.com
Nationwide Toll Free: 800.988.1031

# REAL PROPERTY EXCHANGE AGREEMENT

Exchange No. 10-0513574
(10611 W. Florida Avenue, Lakewood, Colorado)

**THIS AGREEMENT** is entered into on this 5th day of April, 2005, by and between Florida Station, LLC, hereinafter referred to as "Exchanger", and Investment Exchange Group, LLC, a Colorado limited liability company, hereinafter referred to as the "Qualified Intermediary" or "QI".

## RECITALS

**WHEREAS**, Exchanger owns that real property which is held for productive use in a trade or business or investment, located at 10611 W. Florida Avenue, Lakewood, Colorado, hereinafter referred to as the "Relinquished Property", and

**WHEREAS**, Exchanger has entered into Escrow No. 1406362 with Chicago Title of Colorado, Inc. hereinafter referred to as "Escrow"; and

**WHEREAS**, Exchanger desires only to exchange the Relinquished Property for like-kind property, hereinafter referred to as "Replacement Property," in such a way as to qualify for tax-deferred treatment under Code Section 1031 and similar state statutes; and

**WHEREAS**, Exchanger, with a continued intent to complete a tax-deferred exchange pursuant to Code Section 1031, desires to assign its rights in the Relinquished Property to QI and substitute QI as the seller of the Relinquished Property in order to allow for the closing of Escrow pending the location of suitable Replacement Property as specified herein; and

**WHEREAS**, QI is willing to accept such assignment as a Qualified Intermediary and to hold the proceeds from the sale of the Relinquished Property, and received from the Escrow, and to utilize the same in securing, acquiring, and transferring to Exchanger suitable

Replacement Property to complete the tax-deferred exchange according to the terms and conditions as set forth herein.

## AGREEMENTS

**THEREFORE**, the parties hereto agree as follows:

**1. Definitions**. For purposes of this Agreement the following terms are defined as follows:

1.1 **"Code"** means the Internal Revenue Code of 1986, as amended.

1.2 **"Disqualified Person"** means a person bearing a relationship to the Exchanger described in Regulations Section 1.1031(k)-1(k).

1.3 **"Exchange Period"** means the period beginning on the date the Exchanger transfers the Relinquished Property and ending at midnight on the earlier of the 180th day thereafter or the due date (including extensions) for the Exchanger's tax return for the taxable year in which the transfer of the Relinquished Property occurs, as provided in Regulations Section 1.1031(k)-1(b)(2).

1.4 **"Identification Period"** means the period beginning on the date the Exchanger transfers the Relinquished Property and ending at midnight on the 45th day thereafter, as provided in Regulations Section 1.1031(k)-1(b)(2).

1.5 **"Qualified Intermediary"** means a qualified intermediary as defined in Regulations Section 1.1031(k)-1(g)(4).

1.6 **"Qualified Trust"** means a trust wherein the Trustee is NOT the Exchanger or a Disqualified Person, and otherwise meets the requirements of Regulations Section 1.1031(k)-1(g)(3).

1.7 **"Regulations"** means Treasury Regulations.

**2. Transfer of Relinquished Property.**

2.1 Subject to and conditioned upon the close of Escrow and otherwise subject to and upon the terms and conditions set forth in this Agreement, including the optional authority for direct deeding contained in Section 6 hereof, Exchanger hereby agrees to convey the Relinquished Property to QI, and QI hereby agrees to convey to Exchanger, in exchange for the Relinquished Property, Replacement Property provided that the Replacement Property can be acquired by QI with the funds available in the Exchange Account (defined in Section 3 below).

2.2 Prior to the close of Escrow, Exchanger shall assign all of Exchanger's right, title, and interest in and to that certain real estate purchase and sale agreement for the Relinquished Property between Exchanger, as seller, and the buyer of the Relinquished Property to QI. The form of such assignment shall be acceptable to QI

2.3 Prior to the close of Escrow, Exchanger shall assign all of Exchanger's right, title, and interest in and to the Relinquished Property, by either:

(a) Delivery to QI, on or before closing of the Escrow, of a good and sufficient deed conveying the Relinquished Property to QI. As a condition precedent to the closing of Escrow, said deed to QI shall contain warranties no less favorable than those to which the buyer of the Relinquished Property is entitled, shall be recorded, and QI as successor to the rights and interests of Exchanger will concurrently convey the Relinquished Property to the buyer in accordance with the with the provisions of the Escrow. All representations, warranties and covenants made by Exchanger in favor of buyer in connection with the sale of the Relinquished Property are hereby made and extended by Exchanger in favor of QI. Exchanger shall guarantee the representations, warranties and covenants of QI to the buyer in the transaction in Escrow, and shall indemnify and hold QI harmless from any claims or liabilities arising therefrom or connected therewith. Or,

(b) In the alternative, under the provisions of Section 6 hereof authorizing direct deeding, by delivery to Escrow on or before the closing of Escrow, of a deed conveying the Relinquished Property to the buyer.

2.4 At the close of Escrow, all net proceeds from the sale of the Relinquished Property, including cash, notes, and all security therefore, shall be transferred, assigned, and/or conveyed to QI and be held by QI pursuant to the terms of this Agreement.

2.5 QI shall not be required to make any warranties or representations regarding the Relinquished Property which are not guaranteed by Exchanger.

**3. Exchange Account.**

3.1 QI agrees to establish an exchange account concerning this transaction in QI's books and records in favor of Exchanger (hereinafter referred to as the "Exchange Account"). The opening entry for the Exchange Account shall be the net proceeds from the sale of the Relinquished Property as determined under Section 3.2 below. Thereafter, the balance in the Exchange Account shall be reduced from time to time by (i) QI's fees and costs, (ii) all amounts expended by QI in connection with the acquisition of each Replacement Property, as determined under Section 3.3 below, and (iii) any other payments made or costs or expenses incurred by QI for which Exchanger is obligated or responsible under this Agreement. The balance in the Exchange Account also shall be affected in accordance with Section 3.7 below. QI shall provide Exchanger with an accounting, hereinafter referred to as "Reconciliation Statement," of the Exchange Account as soon after the end of the Exchange Period (or closing of the final Replacement Property if sooner) as is practical. In preparing the Reconciliation Statement, QI shall be relying upon information and settlement statements supplied by third

party escrow companies, and Exchanger hereby releases QI from any liability whatsoever in connection with such reliance.

3.2 The net proceeds received by QI from the sale of the Relinquished Property shall be equal to the gross sales price less amounts paid to discharge encumbrances, real estate commissions, prorations of income and expenses (including rents, interest on encumbrances, real estate taxes, etc.), closing costs, title insurance premiums, escrow fees, exchange fees, and any other amounts that would otherwise be chargeable to Exchanger in the Escrow as seller of the Relinquished Property. Exchanger recognizes that some of the proceeds used for the foregoing items may constitute "boot" and may therefore be taxable to Exchanger.

3.3 The amount expended by QI, in connection with the acquisition of each Replacement Property and conveyance thereof to Exchanger, shall include, without limitation, the aggregate amount of all deposits and expenditures by QI in respect to the purchase price, real estate commissions, prorations of income and expenses (including rents, interest on encumbrances, real estate taxes, etc.), closing costs, title insurance premiums, escrow fees, and any other amounts that would otherwise be chargeable to Exchanger as buyer of the Replacement Property, plus costs incurred in the conveyance of the Replacement Property to Exchanger. Exchanger recognizes that some of the proceeds used for the foregoing items may constitute "boot" and may therefore be taxable to Exchanger.

3.4 QI is instructed to deposit all cash funds received by it from the sale of the Relinquished Property into one or more deposit accounts established with one or more financial institutions, and all cash so deposited shall be deemed to be held in the Exchange Account. QI shall hold all notes, contracts and other non-cash proceeds and deposit any cash payments received thereon in the Exchange Account. QI shall have no obligation to collect or otherwise enforce the terms of any note, trust deed, land sale contract, or other similar instrument, but rather shall only deposit payments received by it into the Exchange Account.

3.5 QI is expressly authorized to pool funds in the Exchange Account with funds of other parties who have utilized QI's services in other Exchange Agreements, unless Exchanger elects to establish a Segregated Account pursuant to Section 3.9 below. QI is not a trustee with respect to the Exchange Account.

3.6 In no event shall QI be required to make a cash payment for Replacement Property, including all costs and expenses of said purchase, in excess of the amount of the cash then remaining in the Exchange Account.

3.7 Except as provided in Section 3.8, the Exchanger shall have no right to receive, pledge, borrow, or otherwise obtain the benefits of money or other property in the Exchange Account before the end of the Exchange Period. Interest earned on the Exchange Account will accrue at a rate established by American Business Bank's current money market

account beginning the first business day after the receipt of funds. Said interest on the Exchange Account shall be for the benefit of Exchanger, shall be reported as interest income on Exchanger's tax return, regardless of whether said interest is applied to the purchase of Replacement Property or is received by Exchanger in cash as part of the distribution of the Exchange Account to Exchanger as provided in this Agreement.

3.8 Notwithstanding Section 3.7, the Exchanger may receive, pledge, borrow, or otherwise obtain the benefits of money or other property in the Exchange Account after the end of the Identification Period upon or after:

(a) The receipt by the Exchanger of all of the Replacement Property to which the Exchanger is entitled under this Agreement, or

(b) The occurrence of a material and substantial contingency that (i) relates to the deferred exchange, (ii) is provided for in writing, and (iii) is beyond the control of the Exchanger and of any Disqualified Person, other than the person who is obligated to transfer the Replacement Property to the Exchanger.

3.9 Exchanger may elect to have QI establish the Exchange Account as a Segregated Account for the purpose of investing all cash received by QI with respect to the Relinquished Property. An additional fee of $500 will be charged for the establishment of such account. In order to elect the establishment of a Segregated Account, the Exchanger must request the election form from QI and deliver a signed copy not later than 5 days before the first closing on the Relinquished Property.

4. **Fees.**

4.1 The fees and costs charged by QI under this Exchange Agreement: $1000 for closings on one Relinquished Property and one Replacement Property. The fee for additional closings is $500 for each Relinquished Property and $250 for each Replacement property. If there are no additional closings, the cost to facilitate this exchange will be $1000. This fee is non-refundable. A minimum cancellation fee of 50% of the exchange fee will be charged once this Agreement is signed if the exchange is terminated for any reason prior to closing on the purchase of the Replacement Property.

4.2 Any additional costs such as express mail, overnight deliveries, wiring fees, etc. will also be charged to the Exchanger.

4.3 In the event the Exchanger is carrying back a note on the sale of the Relinquished Property, the Promissory Note and Deed of Trust or Mortgage must show QI as Beneficiary on said documents. An additional fee of $500 will be applied to transactions involving seller financing.

**5. Identification and Acquisition of Replacement Property**

5.1 Within the Identification Period, Exchanger shall by written notice to QI identify Replacement Property to be acquired for Exchanger. Exchanger may identify Replacement Property anywhere in the United States or U.S. Possessions as defined in the Code. Such notice from Exchanger shall unambiguously identify the Replacement Property by street address or legal description, and in the case of Property to be constructed, a description of the improvements to be constructed. Thereafter QI shall undertake to acquire the Replacement Property upon such terms or pursuant to such agreement as Exchanger has negotiated with the seller of such Replacement Property, provided, however, that QI shall incur no liability to Exchanger or the seller if efforts to purchase Replacement Property on the terms and conditions specified by Exchanger shall be unsuccessful. All agreements to purchase shall be executed by or assigned to QI and title to the Replacement Property shall be recorded in QI's name, subject to QI's right to require direct deeding in accordance with Section 6 hereof. If QI takes title to the Replacement Property, it shall immediately thereafter convey title to the Replacement Property to Exchanger in the same condition as the title it received, and QI's conveyance to Exchanger shall constitute full compliance of its obligations concerning the Replacement Property. QI shall have no obligation to notify Exchanger of the expiration of the Identification Period.

5.2 Prior to close of Escrow for the acquisition of the Replacement Property, Exchanger shall assign all of Exchanger's right, title and interest in and to the real estate purchase and sale agreement for the Replacement Property between Exchanger, as buyer, and the seller of the Replacement Property to QI. The form of such assignment shall be satisfactory to QI.

5.3 In the event cash beyond that which is contained in the Exchange Account is required to acquire the Replacement Property, such amount (i) shall be advanced by Exchanger for the benefit of and as directed by QI; (ii) shall be used by QI to acquire the Replacement Property; (iii) shall be considered an interest-free loan from Exchanger to QI which shall be fully satisfied upon the conveyance of Replacement Property to Exchanger; and (iv) in the event the Replacement Property is not conveyed to Exchanger, shall be repaid by QI to Exchanger, upon the written demand of Exchanger.

5.4 QI shall not be required to make any covenants, warranties or representations regarding the Replacement Property, which would survive as to QI following conveyance of the Replacement Property.

**6. Direct Deeding.**

To the extent permitted by Code Section 1031 and the Regulations thereunder, legal title to the Relinquished Property may be transferred directly from the Exchanger to the buyer of the Relinquished Property or from the seller of the Replacement Property to the

Exchanger as applicable. The determination of whether or not to utilize such direct deeding shall be at the sole discretion of QI.

**7. Personal Property.**

Any personal property to be transferred in connection with the exchange may be transferred outside of the escrows and may be separate from the exchange, or alternatively may be separately accounted for in the Escrow if it is more than de minimis personal property.

**8. Covenants, Representations and Warranties.**

8.1 Exchanger covenants, represents and warrants to QI that:

(a) QI shall not be required to assume any secured loan on any Replacement Property or to execute any promissory notes or other evidence of indebtedness in connection with such acquisitions, which would impose any personal liability on QI or its members or managers for the payment thereof.

(b) In no event shall QI be required to pay a cash amount for the Replacement Property, including all costs and expenses incurred in connection with such purchase, in excess of the cash held in the Exchange Account.

(c) QI shall act only in accordance with the written instructions of Exchanger and on the terms of this Agreement in making said acquisition, and may refuse to proceed with said acquisition in the event said instructions exceed the scope of this Agreement.

(d) Neither Exchanger nor the seller of the Replacement Property are "foreign persons" as that term is defined in Code Section 1445. Exchanger will provide certifications meeting the requirements of Code Section 1445 at the closing of Escrow for the Relinquished Property, and will obtain such certifications from the seller of the Replacement Property at the closing of the Replacement Property escrow.

(e) Exchanger warrants that the Relinquished Property and Replacement Property conform to the 1031 exchange requirements.

8.2 QI covenants, represents and warrants to Exchanger that:

(a) QI takes full responsibility for the correct preparation of documents that are, or should have been, prepared for this exchange. If any penalty arises from QI's failure to prepare, or correctly prepare, any document required for the exchange, QI agrees to pay such penalties arising from its negligence.

(b) If this exchange is audited, QI will represent and defend the exchange at no additional cost to Exchanger.

(c) QI will keep in force insurance under a Fidelity Bond Program insuring Exchanger against losses resulting from dishonest acts of QI's employees, members and managers in the amount of $10,000,000 per occurrence.

(d) QI is not a Disqualified Person.

**9. Termination.**

9.1 This Agreement shall terminate and the Exchange Account shall be paid to Exchanger by QI under the following conditions:

(a) If the Exchanger fails to identify Replacement Property within the Identification Period, the exchange has failed and this Agreement shall terminate and QI shall pay the Exchange Account to Exchanger after the end of the Identification Period.

(b) If Exchanger has timely identified Replacement Property, after Exchanger has received all of the identified Replacement Property, this Agreement shall terminate and QI shall pay the Exchange Account to Exchanger forthwith.

(c) If Exchanger has timely identified Replacement Property, upon the occurrence after the end of the Identification Period of a material and substantial contingency that (i) relates to the deferred exchange, (ii) is provided for in writing, and (iii) is beyond the control of Exchanger and any Disqualified Person as defined by Paragraph (k) of Section 1031 other than the person who is obligated to transfer the Replacement Property to the Exchanger, this Agreement may be terminated, in which event QI shall pay the Exchange Account to Exchanger forthwith.

(d) In any other circumstance, at the end of the Exchange Period this Agreement shall terminate and QI shall pay the balance of the Exchange Account to Exchanger forthwith.

9.2 In the event that the Exchanger identifies more than one replacement property and does not purchase all the properties identified, and where the Exchanger has a balance remaining in the Exchange Account, the balance of the Exchange Account cannot be paid to the Exchanger until the end of the Exchange Period without jeopardizing the entire exchange. Exchanger acknowledges and understands that any balance remaining in the Exchange Account can only be paid at the end of the Exchange Period, as defined under recent court cases and IRS rulings.

**Initial here:** ____________

**10. No Reliance.**

Exchanger acknowledges and agrees that it has relied solely upon the advice and judgment of its own independent tax advisors, attorneys, and/or certified public accountants as to the tax consequences and tax implications of the transfer, conveyance and exchange of respective parcels of real or personal property, including the attendant escrow(s), contracts, and documentation, and including this Agreement, and further acknowledges that:

10.1 Exchanger has not relied upon any conversations with or advice of the agents and employees of QI regarding said tax consequences and/or implications.

10.2 Exchanger has been specifically advised and informed, prior to the signing of this Agreement, that the complete scope and content of this Agreement should be reviewed and approved by Exchanger's independent tax consultants and attorneys prior to affixing Exchanger's signature hereto.

**11. Environmental Warranties and Indemnification.**

11.1 Neither the Relinquished Property nor, to the best of Exchanger's knowledge, the Replacement Property (said Relinquished and Replacement Properties hereinafter referred to as the "Subject Properties") is in violation of or the subject of any existing, (or to the best of Exchanger's knowledge based upon inquiry), pending or threatened, investigation by any governmental authority under any federal, state or local law, statute, ordinance, rule, or regulation pertaining to health, safety, industrial hygiene, or the environment (collectively referred to as "Environmental Laws").

11.2 Exchanger has conducted an appropriate inquiry into the previous uses and ownership of the Subject Properties and after such inquiry Exchanger has determined that no "hazardous materials", "toxic substances", "solid waste" or similarly regulated substance, as defined in the Environmental Laws and including petroleum and its fractions (collectively "Hazardous Substance") has been stored, produced, disposed of or released on, from, to, or about any of the Subject Properties. To Exchanger's knowledge, after having conducted all appropriate inquiries, there is no contamination of the soil underlying any of the Subject Properties, nor of any structure or other property on any of the Subject Properties nor any surface or ground water on or under any of the Subject Properties, by any Hazardous Substance, nor are there any sumps, ponds, lakes, lagoons, or waste piles on any of the Subject Properties into which or from which a release of a Hazardous Substance might have occurred or threaten to occur. To Exchanger's knowledge, after having conducted all appropriate inquiry, there are no above or below ground fuel oil, gasoline or chemical storage tanks, and no other underground tanks located on any of the Subject Properties.

11.3 Exchanger shall not, and shall not allow, any occupant of any of the Subject Properties or any other person, to use, generate, manufacture, produce, store, release,

discharge, or dispose of, on, under or about any of the Subject Properties, or transport to or from any of the Subject Properties, any Hazardous Substance except in accordance with all applicable laws, ordinances, rules, regulations, permits, variances, and requirements of any governmental body having jurisdiction over any of the Subject Properties, and in accordance with the highest safety standards then-prevailing in the industry.

11.4 With regard to such environmental provisions, Exchanger shall and does hereby agree to hold QI harmless and indemnify QI, its directors, officers, employees, attorneys and agents from any claim, liability, demand, expense, tax or assessment of any nature or kind, expressed or implied, whether sounding in tort or in contract that may be asserted against QI, its directors, officers, employees and agents, by any person, firm, entity, governmental agency or taxing authority, including but not limited to any and all supplemental tax bills issued by the tax collector for the county in which this transaction is conducted, but not excluding those income taxes of QI, that may arise out of any acts or omissions, active or passive, related to carrying out the terms of this Exchange Agreement or from participation therein, except which arise from the gross negligence or willful misconduct of QI or any other person to be indemnified.

11.5 The representations and warranties of this Section 11 shall be continuing and shall be true and correct at all times from and including the date hereof until and including, the date that Exchanger no longer has any interest in any of the Subject Properties, and the indemnities contained herein shall survive all closings and transfers of the properties which are the subject of this Agreement.

**12. Facsimile Signatures.** Facsimile transmission of any signed original document, retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, the parties shall confirm facsimile transmitted signatures by signing an original document.

**13. Miscellaneous.**

13.1 **Notices.** Any notice or demand required or permitted to be given under this Exchange Agreement shall be deemed to have been given only when it is in writing, has been hand delivered or deposited in the United States mail, with postage prepaid, to be forwarded by certified or registered mail, and is addressed to the party at the address set forth below (and with a copy to the person and address, if any, specified below), or at such other address (and with a copy to such other person and address) as a party may for itself designate from time to time by giving written notice to the other party:

To Qualified Intermediary:

Investment Exchange Group, LLC
Attn: Daniel E. McCabe
650 South Cherry Street, Suite 920

To Exchanger:

Florida Station, LLC
1905 Sherman Street
Denver, CO 80203

Denver, CO 80246 303-864-9774
303.331.1031

13.2 **Completion.** The parties shall execute such other documents and take such other actions as are reasonably necessary or appropriate, or as reasonably requested by the other party, to effectuate the exchange transaction contemplated by this Agreement. Where necessary, and only with Exchangers prior approval, the costs incurred by QI in connection with the preparation or review of such further documents, including QI's attorneys' fees reasonably incurred, shall be paid for by Exchanger.

13.3 **Time.** Time is of the essence of this Agreement.

13.4 **Disputes.** If a dispute arises relating to this agreement and is not resolved, the parties involved in this dispute shall first proceed in good faith to submit the matter to mediation. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. In the event the entire dispute is not resolved within thirty (30) calendar days from the date written notice requesting mediation is sent by one party to the other, the mediation, unless otherwise agreed, shall terminate. If either party shall then commence any action or other proceeding to enforce or interpret this Agreement, the prevailing party shall be entitled to collect, and the other party shall pay, in addition to costs and disbursements allowed by law, the prevailing party's reasonable attorneys' fees and expenses in the action or proceeding, including proceedings on appeal, as may be fixed by the court. Such sum shall include an amount estimated by the court as the reasonable costs and fees to be incurred by the prevailing party in collecting any monetary judgment or award or otherwise enforcing each order, judgment or decree entered in the action or proceeding.

13.5 **Amendments/Modifications.** This Agreement may not be amended or modified in any respect whatsoever except by an instrument in writing signed by the parties hereto. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. If any provisions of this Agreement shall be held invalid, such invalidity shall not affect any other provision hereof.

13.6 **Jurisdiction; Counterparts.** This Agreement shall be construed in accordance with the laws of the State of Colorado. This Agreement may be executed in duplicate counterparts, each of which so executed shall, irrespective of the date of its execution and delivery, be deemed an original, and said counterparts together shall constitute one and the same agreement.

13.7 **Survivor.** This Agreement inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

**IN WITNESS WHEREOF**, QI and Exchanger have executed this Real Property Exchange Agreement as of date first written above.

**QUALIFIED INTERMEDIARY**
**INVESTMENT EXCHANGE GROUP, LLC**

By: ______________________
Daniel E. McCabe, Esq., CES, President

**EXCHANGER**
**FLORIDA STATION, LLC**

By: ______________________
Stuart Ogilvie, Member

______________________
Tax ID / Social Security No.



Investment Exchange Group, LLC

Corporate Office: 650 South Cherry Street, Suite 920 Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448 www.ixg1031.com
Nationwide Toll Free: 800.908.1031

# ASSIGNMENT OF
# CONTRACT TO BUY & SELL REAL ESTATE (COMMERCIAL) FOR EXCHANGE PROPERTY

Exchange No. 10-0513574
(10611 W. Florida Avenue, Lakewood, Colorado)

This agreement is entered into by and between Investment Exchange Group, LLC (hereinafter called Qualified Intermediary or QI) and Florida Station, LLC, (hereinafter called Exchanger).

**WITNESSETH:**

**Whereas** Exchanger, as Seller, entered into that certain Contract to Buy & Sell Real Estate (Commercial) dated February 22, 2005, with Nancy T. Magoon Trustee, Purchaser. This agreement, together with any and all amendments thereof (collectively called the Agreement), is incorporated herein by this reference; and

**Whereas** in said Agreement, Purchaser agreed to cooperate in the exchange in order for the subject transaction to qualify for Exchanger as part of a tax deferred exchange under Section 1031 of the Internal Revenue Code of 1986; and

**Whereas** QI and Exchanger have executed an Exchange Agreement in which Exchanger has agreed to transfer the exchange property to QI, in consideration of QI's promise to acquire suitable replacement property and transfer same to Exchanger; and

**Whereas** QI agrees to assume and perform Exchanger's rights under the Agreement;

**NOW, THEREFORE**, the parties agree:

1. Exchanger hereby assigns to QI the Seller's rights, title and interest in the Agreement for the relinquishment of the exchange property.

2. QI hereby assumes the Exchanger's rights, title and interest in the Agreement to

transfer said exchange property to the Purchaser.

3. QI hereby requests and directs the Exchanger to deed directly to the Purchaser the property subject to the Agreement.

**IN WITNESS WHEREOF**, the parties have executed this agreement as their free and voluntary act and deed, on the date indicated by each signature.

**QUALIFIED INTERMEDIARY**
**INVESTMENT EXCHANGE GROUP, LLC**

By: ______________________
Daniel E. McCabe, Esq., CES, President

April 5, 2005
Date

**EXCHANGER**
**FLORIDA STATION, LLC**

By: ______________________
Stuart Ogilvie, Member

______________________
Date

# STOP!

## Attention Liz:

Please note that the following page (The Notice) is to be signed by YOU!

(This is very commonly misunderstood.)

Thanks for your assistance in this matter.
Have a Great Closing!

Your friends at IXG



Investment Exchange Group, LLC
Corporate Office: 650 South Cherry Street, Suite 920 Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448 www.ixg1031.com
Nationwide Toll Free: 800.908.1031

# NOTICE OF ASSIGNMENT
# OF
# CONTRACT TO BUY & SELL REAL ESTATE (COMMERCIAL)

Exchange No. 10-0513574
(10611 W. Florida Avenue, Lakewood, Colorado)

April 5, 2005

Dear Nancy:

You are hereby notified that the Seller, under the Contract to Buy & Sell Real Estate (Commercial) dated February 22, 2005, between Nancy T. Magoon Trustee, Purchaser, and Florida Station, LLC , Seller, together with any and all amendments thereof (collectively called the Agreement), has assigned to the undersigned all of Seller's rights and benefits under said Agreement. The undersigned, as Qualified Intermediary, has accepted said assignment.

**QUALIFIED INTERMEDIARY**
**INVESTMENT EXCHANGE GROUP, LLC**

By: ______________________________
Daniel E. McCabe, Esq., CES, President

ACKNOWLEDGED BY:

**I HEREBY CERTIFY** that I delivered a copy of this Notice of Assignment to the Purchaser on this
______ day of ________________________________, 2005.

______________________________
Liz Greco
Chicago Title of Colorado, Inc.



**Investment Exchange Group, LLC**

Corporate Office: 650 South Cherry Street, Suite 920 Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448 www.ixg1031.com
Nationwide Toll Free: 800.998.1031

**DATE:** April 5, 2005

**TO:** Liz Greco
Chicago Title of Colorado, Inc.
2401 E. 2nd Avenue, Suite 150
Denver, Colorado 80206

The net proceeds of sale in this transaction are to be wired to our trust account as follows:

**TO:** Investment Exchange Group, LLC
**BANK:** Matrix Capital Bank
700 17th Street
Denver, CO 80205

**ACCOUNT NO.:** 707-100-0025
**ABA NO.:** 312-270-418
**ESCROW NO.:** 1406362
**RE:** Florida Station, LLC
**EXCHANGE NO.:** 10-0513574

When the wire transfer has been initiated, please fill in the following information and fax it to us at (303) 331-8448. This will initiate our follow-up with our bank. Thank you.

Date and time of wire transfer ______________________

Exact amount of wire transfer ______________________

# Exhibit 2

SUB-ACCOUNTING AND MARKETING AGREEMENT

This Sub-accounting and Marketing Agreement (the "Agreement") is made and entered into by and between MATRIX CAPITAL BANK ("Bank"), a federal savings bank, and **Investment Exchange Group, LLC,** a Colorado limited liability company ("Company"), as of this 30th day of March, 2005.

WHEREAS, Company provides custodial services to individuals and entities in connection with property exchanges ("1031 Exchanges") in accordance with Section 1031 of the Internal Revenue Code and applicable regulations thereunder ("IRC 1031"); and

WHEREAS, the Company's primary business is acting as a "qualified intermediary" under IRC 1031 (such services provided in connection therewith being called herein "Qualified Intermediary Services"); and

WHEREAS, Company has opened one interest bearing money market account (the "MMA") and one non-interest bearing demand deposit account (the "DDA" and, together with the "MMA", such accounts are herein referred to collectively as the "Omnibus Custodial Account") with Bank for deposit of the monies associated with the 1031 Exchanges in which Company provides Qualified Intermediary Services; and

WHEREAS, the aggregate balances in the Bank Accounts are, on average, in excess of $100,000 and represent numerous underlying 1031 Exchanges; and

WHEREAS, the regulations of the FDIC provide that deposit account records of an insured bank must disclose the existence of a relationship that provides the basis for additional insurance, and the details of that relationship must be ascertainable from the records of the insured bank or the records of the account customer; and

WHEREAS, Company desires that the funds maintained in respect of the 1031 Exchanges be insured to the fullest extent provided by law for each 1031 Exchange, and consequently, records must be prepared regarding the status of each 1031 Exchange which is within and a part of each Bank Account; and

WHEREAS, Bank could provide account holder record-keeping for the underlying 1031 Exchanges itself or obtain such services from a third-party provider and

WHEREAS, Bank could advertise, market, and promote its depositary services to third parties in need of 1031 Exchanges;

WHEREAS, Company is willing to act as the third-party provider for the Bank to provide the underlying holder record-keeping and certain other administrative services



WARD CORR.
0018

with respect to the 1031 Exchange activity and balances maintained in the Omnibus Custodial Account by the underlying 1031 Exchanges; and

WHEREAS, Company is willing to advertise and market, on an as needed basis, the depositary services of the Bank to third parties in connection with its marketing of its Qualified Intermediary Services to such third parties; and

NOW THEREFORE, in consideration of the mutual promises herein contained, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, it is mutually, agreed as follows:

1. Company shall maintain the Omnibus Custodial Account with Bank for the benefit of the underlying 1031 Exchanges. Bank shall indicate in its records that the Omnibus Custodial Account is maintained by Company in a custodial capacity for the benefit of the underlying 1031 Exchanges, and shall further indicate that the delineation of the underlying beneficiary of each 1031 Exchange in the Omnibus Custodial Account at any particular time is maintained by Company

2. Company shall maintain separate accounting and record-keeping for each of its 1031 Exchanges which have balances in the Omnibus Custodial Account. Company shall be responsible for providing such accounting and record-keeping services as third-party provider for the Bank. Company, on behalf of the underlying 1031 Exchanges, shall issue instructions, by wire transfer, check or other appropriate means acceptable to Company and Bank regarding transactions involving funds in the Omnibus Custodial Account. Bank shall have no duty to act in regard to the Omnibus Custodial Account in the absence of such instructions. Company further represents and warrants to, and covenants and agrees with, Bank that its primary business is, and at all times during the term of this Agreement shall be, providing Qualified Intermediary Services.

3. Bank shall provide customary banking services to the Omnibus Custodial Account. It is understood and agreed that Bank shall be responsible under this Agreement for the servicing of the Omnibus Custodial Account and not the underlying 1031 Exchanges. Bank shall furnish to Company on a monthly basis, a bank statement for each of the two underlying accounts that comprise the Omnibus Custodial Account as requested by Company. Such statements shall be mailed by Bank or be made available to Company on the third business day following the close of the period being reported.

4. (a) Company, as third-party provider for the Bank, shall provide account holder record-keeping and certain other administrative services for the underlying 1031 Exchanges as follows: (i) deposits to the Omnibus Custodial Account in respect of the underlying 1031 Exchanges; and (ii) withdrawals from the Omnibus Custodial Account in respect of the underlying 1031 Exchanges; and (iii) accounting services provided to the underlying 1031 Exchanges; and (iv) data processing services required for sub-account administration of the Omnibus Custodial Account

(b) Company shall, on an as needed basis as requested by the Bank use commercially reasonably efforts to market the Bank's depositary services to third parties in connection with its promotion of its Qualified Intermediary Services. Notwithstanding the foregoing, Company shall not make any statements or representation regarding the Bank's depositary services except as may be approved from time to time in writing by the Bank.

5. Company shall furnish to Bank by the fifteenth (15th) day of each month a trial balance which reflects the exchange number, name, and account balance of each 1031 Exchange (the "Active Exchanges") in the Omnibus Custodial Account as of the last business day (the "Preceding Month End") of the preceding calendar month (the "Preceding Month"). Such report shall be accompanied by a summary which is signed and certified as true and accurate by the chief financial officer of Company or his/her designate.

6. Within ten (10) days after receipt of the monthly report referred to in Section 5 above, Bank shall pay to Company – with respect to the Preceding Month - interest with respect to the funds in the MMA as set forth in Exhibit A. Within ten (10) days after receipt of the monthly report referred to in Section 5 above, in consideration of the services provided by Company pursuant to Section 4(a) above, Bank shall pay to Company – with respect to the Preceding Month - a monthly fee equal to twenty eight dollars ($28.00) for each Active Exchange with a balance in the Omnibus Custodial Account as of the Preceding Month End (the "Sub-accounting Fee"). Within ten (10) days after receipt of the monthly report referred to in Section 5 above, in consideration of the services provided by Company pursuant to Section 4(b) above, Bank shall pay Company – with respect to the Preceding Month - a fee equal to three hundred dollars ($300.00) for each additional Active Exchange with a balance in the Omnibus Custodial Account as of the last business day of the Preceding Month End, which such Active Exchange did not have a balance in the Omnibus Custodial Account as of the last business day of the calendar month immediately prior to the Preceding Month End (the "Marketing Fee"). No other fees or interest of any nature shall be due to Company from Bank for any reason. The payment of the fees and interest under this Section 6 is subject in all respects to the terms, conditions, and limitations set forth in Exhibit A attached hereto.

7. Upon reasonable written notice to the Company, the Bank shall have the right to make a physical audit at any time on the Bank's request of Company's books and records relevant to the matters covered by this Agreement to verify the accuracy of any information, report or document provided to Bank in connection with this Agreement and any such other matters deemed relevant by the Bank. Bank shall not make more than four (4) such audits each calendar year.

8. Bank personnel will be made available, as may be reasonably requested, to consult with Company in coordinating its operations pursuant to this Agreement.

9. Any amendment to this Agreement shall be valid only if in writing and signed by both parties. The Term of this Agreement shall be through March 1, 2008 (the "Termination Date"). This Agreement shall automatically renew for successive one year periods unless 30 days prior to the Termination Date or the anniversary date of any subsequent Termination Date, Company or Bank provided written notice of its intent to not renew this Agreement.

10. During the term of this Agreement, Company agrees to use its best efforts to ensure that Bank shall be the exclusive depository of cash balances for the 1031 Exchanges comprising the Omnibus Custodial Account. Depository shall include any financial institution, mutual fund, or any other entity which accepts and maintains cash depository accounts or mutual fund share accounts with $1.00 constant share values. Bank acknowledges that under unique circumstances certain 1031 Exchange accounts may need to be opened at other financial institutions.

11. Notwithstanding Sections 9 or 10 above, this Agreement may be terminated as follows:

(a) upon a breach by Company of any representation, warranty, covenant, agreement or other provision contained herein, Bank may terminate this Agreement by providing written notice to Company at least ten (10) days prior to such termination;

(b) upon a breach by Bank of any covenant or promise contained herein, Company may terminate this Agreement by providing written notice to Bank at least ten (10) days prior to such termination;

(c) upon any written instruction, enforcement, or other action by any regulatory agency with enforcement authority over either Bank or Company is received indicating that this Agreement, in whole or in part, violates any applicable regulation, order or directive to which Company or Bank are subject, now or at any time during the term of this Agreement, this Agreement shall terminate upon the expiration of ten (10) days after receipt of such objection, order, action or instruction by either party; provided, that the party receiving such objection, order, action or instruction shall, within one (1) business day of receipt, provide a copy of such notice to the other party, but failure to so provide such copy shall not affect the termination of this Agreement pursuant to this subsection (c);

(d) upon the effectiveness of a material modification or amendment to IRC 1031 – which such modification or amendment eliminates the tax advantages of 1031 Exchanges, Company may terminate this Agreement by providing written notice to Bank at least ten (10) days prior to such termination; and

(e) upon the effectiveness of a "Change-in-Control" of either the Bank or the Company, a party may terminate this Agreement by providing written notice to the other party not later than ten (10) days following the effectiveness of such Change-in-Control.

For purposes hereof, the term "Change-in-Control" shall mean (i) the sale of all or substantially all of the assets of such party or (ii) any transaction (which shall include a series of related transactions or a transaction occurring pursuant to a plan) that has the result that the present shareholders of such party cease to own or control (individually or collectively) more than 50% of (x) the voting stock of such party or (y) the voting stock of any entity that results from the participation of such party in a consolidation, merger or other similar form of corporate transaction.

Bank represents and warrants that, during the term of this agreement, it shall at each calendar quarter end maintain sufficient capital so as to meet the definition of a "Well Capitalized" institution as set forth in 12 CFR 565.4. In the event Bank fails to meet the definition of a Well Capitalized institution for two consecutive calendar quarters, Company may terminate this Agreement upon thirty (30) days' prior written notice.

12. Bank shall indemnify and hold harmless Company and each of its agents, affiliates and employees from all suits, actions, costs, expenses (including reasonable attorneys' fees), judgments or claims of any character, type, or description brought, incurred or made ("Company Costs") arising from or relating to the gross negligence or willful misconduct of Bank in the performance of this Agreement; provided that, notwithstanding the foregoing, Bank shall have no liability to Company for any acts or omissions taken or made in good faith by Bank.

13. Company shall indemnify and hold harmless Bank and its agents, affiliates and employees from all suits, actions, costs, expenses (including reasonable attorneys' fees), judgments or claims of any character, type, or description brought, incurred or made ("Bank Costs") arising from or relating to (A) the performance of this Agreement, including without limitation any breach of any provision of this Agreement by Company; and (B) any claim or assertion by any customer of Company, or any other third party, relating to any 1031 Exchange or any service provided by Company or Bank to any customer of Company, including without limitation (i) any claim that Bank or Company has failed to take all actions necessary to provide FDIC insurance on with respect to the underlying 1031 Exchanges or the Omnibus Custodial Account to the fullest extent permitted by law or (ii) and claim that Company has failed to provide the Qualified Intermediary Services in an appropriate manner or in accordance with applicable law; provided that the foregoing indemnification in subparagraph (B) shall not available to the Bank if the Bank Costs result directly from the gross negligence or willful misconduct of Bank.

14. Company and not the Bank is the custodian to the account holders who have interests in the Omnibus Custodial Account. The Bank shall have no fiduciary or custodial obligation to any individual account holders who have interests in a Bank Account. In particular, the Bank shall have no responsibility for any bookkeeping or

record-keeping functions of Company on behalf of any individual account holder, or for receipt or disposition of funds in the Omnibus Custodial Account; provided, however, the Bank shall honor Company's written instructions regarding disposition of the Omnibus Custodial Account.

15. This Agreement and the account documents entered into between the parties relating to the Omnibus Custodial Account (the "Account Documents") contain the entire understanding of the parties with respect to the subject matter hereof, and supersede all prior agreements and understandings relating to the subject matter hereof. References herein to this Agreement shall include all schedules and exhibits hereto. In the event of any conflict between the provisions hereof and the Account Documents, the provisions of this Agreement shall control.

16. This Agreement may be executed by the parties in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. Any provision of this Agreement that is invalid, illegal or unenforceable shall not affect in any way the remaining provisions hereof.

17. This Agreement shall be governed by the laws of the United States of America and applicable laws of the State of Colorado, without regard to the choice of law principles thereof.

18. Any notices provided for under this Agreement shall be in writing delivered by mail, fax or by overnight delivery to:

If to: Investment Exchange Group LLC

Phone: 303-331-1031

Fax: 303-331-8448

Contact: Shirley McCabe

If to: Matrix Capital Bank
700 17th Street, Suite 100
Denver, CO 80202

Phone: 720-956-6504
Fax: 720-946-1187
Contact: Patrick Howard

19. Company represents and warrants that each 1031 Exchange that is an Active Exchange with a balance comprising part of the Omnibus Custodial Account does and will at all times meet the requirements of an interest bearing savings account as set forth in 12 CFR 204. Company agrees to provide Bank, upon reasonable notice and request, Company's Client Funds Report – Total by Client, or other report in substantially the same format, for the purpose of auditing the compliance of the 1031 Exchanges with this provision, particularly as it relates to limitations on the number of transactions for each 1031 Exchange during a Statement Cycle.

IN WITNESS WHEREOF, the undersigned have duly executed this Subaccounting Agreement as of the date first written above.

Investment Exchange Group, LLC

BY: ____________________
Title President.

MATRIX CAPITAL BANK

BY: ____________________
Title

EXHIBIT A

I. Interest Payable on Funds in the MMA.

The amount of interest payable to Company with respect to funds in the MMA shall be determined as follows. For a calendar month in question, the amount of interest payable for such month shall be determined by multiplying (A) the average daily balance in the MMA for such month by (B) the sum of (i) the Fed Funds Target Rate, as published in the on-line edition of the *Wall Street Journal*, for the last business day of the calendar month immediately preceding the calendar month in question, plus (ii) 0.50%.

For example, assuming the Fed Funds Target Rate as of the last business day of February 2005 was 2.50%, then the MMA Interest Amount for the calendar month ended March 31, 2005 would be as follows: (C) 2.50% + .50% = 3.00%; multiplied by (D) the average daily balance in the MMA during the month of March 2005.

II. Limitations on Sub-accounting Fee and Marketing Fee

For purposes of the Agreement and this Exhibit A, the term "DDA Payment Amount" means, with respect to a calendar month in question, the result determined by multiplying (A) the average daily balance in the DDA for the calendar month in question by (B) the sum of (i) the Fed Funds Target Rate, as published in the on-line edition of the *Wall Street Journal*, for the last business day of the calendar month immediately preceding the calendar month in question, plus (ii) 0.50%.

For example, assuming the Fed Funds Target Rate as of the last business day of February 2005 was 2.50%, then the DDA Payment Amount for the calendar month ended March 31, 2005 would be as follows: (C) 2.50% + .50% = 3.00%; multiplied by (D) the average daily balance in the DDA during the month of March 2005.

For purposes of the Agreement and this Exhibit A, the term "Inception Marketing Fee Balance" means (E) the total number of Active Exchanges with a balance in the Omnibus Custodial Account as of the date of inception of the Agreement multiplied by (F) three hundred dollars ($300.00). For example, if on the inception date of the Agreement, there are a total of 300 Active Exchanges with a balance in the Omnibus Custodial Account, regardless of whether the balance for any particular Active Exchange resides in the MMA, the DDA or both (i.e., in the case part of the balance resides in both the MMA and the DDA, then still counting that type of exchange as only one Active Exchange), then the "Inception Marketing Fee Balance would be (G) 300 multiplied by (H) $300.00, or a total of $90,000.

Notwithstanding any provision in the Agreement or this Exhibit A to the contrary, the aggregate amount payable by the Bank for both the Sub-accounting Fee and the Marketing Fee with respect to any given calendar month shall not exceed the DDA

Payment Amount for such calendar month in question; provided, however, that in the event the amount of the Sub-accounting Fee and the Marketing Fee for a calendar month in question (as determined, for these purposes only, by using the first two sentences of Section 6 of the Agreement and not the limitations contained in this Exhibit A or the other provisions of Section 6 of the Agreement – and defined herein as the "Determined Amount") is less than the DDA Payment Amount for such calendar month in question (any such shortfall between the Determined Amount and the Payment Amount for such month being defined herein as the "Monthly Shortfall"), then the aggregate amount for both the Sub-accounting Fee and the Marketing Fee for such calendar month shall be deemed to be the DDA Payment Amount. The foregoing proviso shall terminate and be of no further force and effect when the sum of all Monthly Shortfalls equals or exceeds the Inception Marketing Fee Balance.. For example, if the Inception Marketing Fee Balance is $90,000, and the Monthly Shortfall for March 2005 is $30,000, for April 2005 is $40,000 and for May 2005 is $40,000, then the aggregate amount for both the Sub-accounting Fee and Marketing Fee for March 2005 shall be the DDA Payment Amount, the aggregate for both the Sub-accounting Fee and Marketing Fee for April 2005 shall be the DDA Payment Amount, and the aggregate for both the Sub-accounting Fee and Marketing Fee for May 2005 shall be the DDA Payment Amount (and the proviso regarding Monthly Shortfalls shall have terminated in May 2005 since the sum of all such Monthly Shortfalls in this example ($110,000) exceeds the Inception Marketing Fee Balance in this example ($90,000). And, in this example, if the Determined Amount for June 2005 is less than the Payment Amount for June 2005, then the aggregate for both the Sub-accounting Fee and the Marketing Fee for June 2005 shall be the Determined Amount.

# SCHEDULE A

**FEDERAL RESERVE BANK HOLIDAY SCHEDULE and WIRE TRANSFER CUT OFF TIMES**

New Year's Day

Martin Luther King Day

President's Day

Memorial Day

Independence Day

Labor Day

Columbus Day

Veterans Day

Thanksgiving Day

Christmas Day

*For holidays falling on Saturday, Federal Reserve Banks and branches will be open the preceding Friday. For holidays falling on Sunday, Federal Reserve Banks and branches will be closed on the following Monday.

**WIRE TRANSFER CUT OFF TIMES and GUARANTEE**

As stated on Page 5, Section B: "Wire Transfer service allows you to create a wire transfer file that we will then review and consider for processing if submitted before the posted cutoff time."

The posted cut off time is 3:00pm Mountain Time (MT) and will be strictly enforced.

Any wire request(s) received after the posted 3:00pm MT cut off, is not guaranteed for same day delivery and may be re- scheduled to process the following business day.

Acknowledgement Date: 2.24.06

Authorized by: Shirley McCabe
(Print Name)

Authorized by: [signature]
(Signature)

# Exhibit 3

United Western Bank
High Risk Account Monitoring Procedures - Wires

C Cleu 10/24/06

Completed By: TIFFANY NIX
Completed On: 9/25/06

One requirement of the bank's BSA/AML Compliance Program is to identify, research, monitor, and report suspicious activity. The Compliance Department will be responsible for ensuring this form is completed on all wire activity for accounts that have been classified as High Risk. High Risk accounts require monitoring procedures to be performed on all wire transfer activity. The High Risk Account Monitoring Procedures for wire activity will assist the bank in determining if a Suspicious Activity Report is necessary, or if further monitoring procedures will be required. Under no circumstances may any employee inform the customer that their account(s) and transactions are being investigated for potential suspicious activity. Separate summaries, photocopies, wire transfer instructions, etc. may be attached to this sheet to further document the results of the monitoring procedures performed.

The following customer and/or account have been identified as High Risk.

Customer Name: Investment Exchange Group Account Number: 70710000217 / 70710000225

Customer Name: ______ Date Opened: 3/22/05

Nature of Business/Occupation or source of wealth of customer: QI Account

The following table summarizes the wire activity for the monitoring period. The Originator/Beneficiary information, the location, the type of business or occupation is required for the party to the transaction that is not the bank's customer. The bank performs CIP procedures on all customers at the time of account opening, so information necessary for these monitoring procedures is already on file.

| Date | In/Out | Amount | Orig./Beneficiary | Location | Type of Business/Occupation | OFAC Verification |
|---|---|---|---|---|---|---|
| 8/3 | O | 20,000,000 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/8 | O | 30,000,000 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/10 | O | 7,000,000 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/17 | O | 902,297.23 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/18 | O | 82,104.70 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/21 | O | 472,400.61 | 1031 Tax Group | Virginia | Investment Exchange | Yes |

* See Additional Transfers on Separate Sheet

1. Look at the customer's previous account history, new account questionnaire, and wire activity, if any. Is wire activity an established practice or pattern for this account? ☒ Yes ☐ No

2. Have there been incoming and outgoing wires of similar dollar amounts within a short period of time?
☒ Yes ☐ No

3. Is the frequency of wire transfers in line with previous activity or history, anticipated activity from the New Accounts Questionnaire, and in line with business or occupation of the customer?
☒ Yes ☐ No ☐ N/A (New Account)
If no, please explain:
*Wire transfer activity is in line with type of business; however this month's activity is for larger dollar amounts and more frequent transfers than previous activity. Amounts total $62,729,792.61 to same beneficiary.*

4. Is the amount of the wire transfer(s) in line with the customer's business or occupation?
☒ Yes ☐ No
If no, please explain:

5. Were there any foreign wires received or sent during the review period? ☐ Yes ☒ No
6. If the answer to question 5 was yes, is there an apparent business purpose for the foreign wires and the location from which the wire was sent or received? ☐ Yes ☐ No ☒ N/A
   If no, please explain:

7. Were any PUPID (pay upon proper identification) wires accepted for the review period?
   ☐ Yes ☒ No
   (If so, an exception to policy/procedures must be documented and approved by authorized personnel, as Matrix Capital Bank does not accept PUPID wires.)

8. Were any of the wires sent to or received from a HIDTA or HIFCA? ☐ Yes ☒ No ☐ N/A
   If yes, please provide details:

9. Geographic Location: Were any of the wires to a known Tax Haven, Financial Secrecy Haven, or designated Non-Cooperative Country or Territory? ☐ Yes ☒ No ☐ N/A
   If yes, please provide details:

10. Is the beneficiary or originator that is not the bank's customer well known? ☒ Yes ☐ No
    (For example, is the company well known like Security Title or Wal-Mart?)

11. Is the bank's customer/account an identified Money Services Business?
    ☐ Yes ☒ No

12. Does the bank have any other customers in the same or similar profession with comparable transactions (volume of transactions and dollar amounts)? ☒ Yes ☐ No

13. If the answer to question 12 was yes, please identify the customers and account numbers.

    Customer Name: All other QI Accounts Account #________

    Customer Name: ________ Account #________

14. Please list the source of funds for the outgoing wire. Identify recent cash deposits, copies of deposited items, and pay particular attention to multiple types of US monetary instruments deposited (below the BSA reporting threshold) and the funds subsequently wired out to a non-US financial institution.
    INBOUND WIRES, IXB DEPOSITS,

15. Please list any additional details/opinions that validate the transactions as either legitimate or suspicious. Please list any communication with the branch, customer, or the account officer and the customer's employment/source of income in the space below: QI ACCOUNT, SO LARGE TRANSFERS ARE COMMON, HOWEVER ALL TRANSFERS WERE TO THE SAME INDIVIDUAL, LARA COLEMAN ON BEHALF OF INVESTMENT PROPERTIES OF AMERICA.

16. Based on the monitoring procedures performed, would you recommend the bank file a Suspicious Activity Report on this customer? ☐ Yes ☐ No
    Please explain your answer to question 16:
    ACCORDING TO TYPE OF BUSINESS, TRANSACTIONS APPEAR TO BE NORMAL, HOWEVER SUCH LARGE AMOUNTS AND FREQUENCY OF TRANSFERS IS UNORDINARY. TRANSFERS WILL BE REFERRED TO COMPLIANCE OFFICER PER HIDTA PROCEDURES, SINCE THEY TOTAL MORE THAN TEN IN A 30 DAY PERIOD.

    CC 10/4/06

UWB 0150

| Date | In/Out | Amount | Orig./Beneficiary | Location | Type of Business/Occupation | OFAC Verification |
|---|---|---|---|---|---|---|
| 8/22 | O | 535,792.46 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/24 | O | 441,307.40 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/25 | O | 286,623.19 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/28 | O | 189,625.13 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/29 | O | 642,460.94 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| 8/31 | O | 2,177,180.95 | 1031 Tax Group | Virginia | Investment Exchange | Yes |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Total Transactions:** 12 transactions in August.

**Beneficiary:** Lara Coleman with Investment Properties of America.

**Receiving Bank:** Wachovia in Roanoke, VA

Destination was not listed on data sheets. Receiving bank's ABA number was used to determine location of receiver.

# Exhibit 4

**Investment Exchange Group, LLC**
**Exchange Deposits into Matrix Capital Bank**
**August 4, 2006 to December 29, 2006**

* GREEN HIGHLIGHTS ARE CURRENT EXCHANGE VICTIMS

| Current Victim | TYPE | Date | | Name | MEMO | Account | Class | Matrix Acct # | Credit | |
|---|---|---|---|---|---|---|---|---|---|---|
| No | Deposit | 8/4/2006 | Wire | Crumple | Wire from Moulton Land Title | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 118,746.63 | $ - |
| No | Deposit | 8/4/2006 | Wire | Jimenez, | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 28,726.09 | $ - |
| No | Deposit | 8/4/2006 | Wire | Lucero, I | Wire from First American Heritage | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 28,726.09 | $ - |
| No | Deposit | 8/4/2006 | Wire | Lutz, Lin | Wire from LandAmerica Financial Group | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 76,539.12 | $ - |
| No | Deposit | 8/4/2006 | Wire | SanFelip | Wire from Prestige Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 77,460.69 | $ - |
| No | Deposit | 8/7/2006 | Wire | Gross, W | Wire from Fowler White Boggs Banker, P.A. | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 175,000.50 | $ - |
| No | Deposit | 8/7/2006 | Wire | McDill, L | Wire from Stephen Berry | 2100 · Client Exchange Funds Payable | 20 - Pam Childs:20 - Non | Exch. Acct. 7071000025 | $ 242,659.13 | $ - |
| No | Deposit | 8/7/2006 | Wire | McNulty | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 89,712.72 | $ - |
| No | Deposit | 8/7/2006 | Wire | Skalitzky | Wire from Fast Action Title | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 181,304.74 | $ - |
| No | Deposit | 8/7/2006 | Wire | Tunna, J | Wire from Potter & Co Solicitors LTD | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 593,870.40 | $ - |
| No | Deposit | 8/8/2006 | Wire | Wilcox, I | Wire from Colorado Land Title Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 488,656.59 | $ - |
| Yes | Deposit | 8/8/2006 | Wire | Mehus, . | Wire from First American Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 50,000.00 | $ - |
| Yes | Deposit | 8/8/2006 | Wire | Miller, S | Wire from First American Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 50,000.00 | $ - |
| No | Deposit | 8/9/2006 | Wire | ARI-CBP | Wire from Stewart Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 522,574.36 | $ - |
| No | Deposit | 8/9/2006 | Wire | CassKael | Wire from Guardian Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 214,857.17 | $ - |
| No | Deposit | 8/9/2006 | 6E+06 | Flis, Lind | Check from Land Title Guarantee Company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 80,936.84 | $ - |
| No | Deposit | 8/9/2006 | Wire | Giann, G | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 196,358.54 | $ - |
| No | Deposit | 8/9/2006 | 2E+07 | The Clar | Check from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 220,342.83 | $ - |
| No | Deposit | 8/10/2006 | Wire | Alvarez, | Wire from Adams, Gallinar, Iglesias PA | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 5,892,280.51 | $ - |
| No | Deposit | 8/10/2006 | Wire | Chambe | Wire from Austin Escrow & Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 357,025.06 | $ - |
| No | Deposit | 8/10/2006 | Wire | Chambe | Wire from Austin Escrow & Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 382,909.77 | $ - |
| No | Deposit | 8/10/2006 | Wire | Perron, | Wire from The Hays County Abstract Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 456,779.11 | $ - |
| No | Deposit | 8/11/2006 | 532461 | Avalos, I | Check from Land Title - Proceeds Overage | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 275.23 | $ - |
| No | Deposit | 8/11/2006 | 3397 | Hinkson, | Check from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 10,936.77 | $ - |
| No | Deposit | 8/11/2006 | Wire | Paul E S | Wire from Fremont County Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 384,520.15 | $ - |
| No | Deposit | 8/11/2006 | 4957 | Scan Ser | Check from Fisher & Wilsey - EM refund | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 25,000.00 | $ 10,000.00 |
| No | Deposit | 8/11/2006 | 4958 | Scan Tro | Check from Fisher & Wilsey - EM refund | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 10,000.00 | $ - |
| No | Deposit | 8/11/2006 | 2E+07 | Stovall, J | Check from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 192,656.50 | $ - |
| No | Deposit | 8/14/2006 | Wire | Garner, | Wire from Grand Canyon Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 43,505.61 | $ - |
| No | Deposit | 8/15/2006 | Wire | Boardm | Wire from AmeriTitle | 2100 · Client Exchange Funds Payable | 65 - Bobby Parks | Exch. Acct. 7071000025 | $ 200,783.63 | $ - |
| No | Deposit | 8/15/2006 | Wire | Hankins, | Wire from United Title of Nevada | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 88,069.18 | $ - |
| No | Deposit | 8/15/2006 | Wire | Vetter, F | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 78,750.45 | $ - |
| No | Deposit | 8/16/2006 | Wire | Renner, | Wire from LandAmerica Financial | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 79,551.86 | $ - |
| No | Deposit | 8/16/2006 | Wire | Rice, Do | Wire from Land Title Guarantee Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 27,227.36 | $ 650.00 |
| No | Deposit | 8/16/2006 | Wire | Rice, Do | Wire from Land Title Guarantee Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 650.00 | $ - |
| No | Deposit | 8/17/2006 | Wire | Highlanc | Wire from Bay Title | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 137,027.30 | $ - |
| No | Deposit | 8/17/2006 | Wire | Theuer, | Wire from Tradewinds Title - 2732 NE 4th N | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 6,874.02 | $ - |
| No | Deposit | 8/18/2006 | Wire | Anderso | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 248,589.13 | $ - |
| No | Deposit | 8/18/2006 | Wire | Hilltop P | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 88,675.34 | $ - |
| No | Deposit | 8/18/2006 | Wire | Kottman | Wire from May & Davies Attorneys at Law | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 70,651.43 | $ - |
| No | Deposit | 8/18/2006 | Wire | The D. W | Wire from The Florida Bar Foundation | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 64,484.71 | $ - |
| No | Deposit | 8/21/2006 | 14416 | McWillia | Check from Austin Escrow & Title, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 193,125.50 | $ - |
| No | Deposit | 8/21/2006 | Wire | Pied, Bru | Wire from Hawaii Escrow Title Inc. | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 114,644.99 | $ - |
| No | Deposit | 8/21/2006 | Wire | The Jo R | Wire from Title Services of Southwest Florid | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 229,021.97 | $ - |
| No | Deposit | 8/23/2006 | Wire | DeWeije | Wire from Rocky Mountain Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 563,339.55 | $ - |
| No | Deposit | 8/23/2006 | Wire | Doris L. I | Wire from Graebel Companies | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 650.00 | $ - |
| No | Deposit | 8/23/2006 | Wire | Zortman | Wire from Campbell Abstract/ First Amer. | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 43,255.00 | $ - |
| No | Deposit | 8/24/2006 | Wire | Cargay, | Wire from First American Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 296,229.32 | $ - |
| No | Deposit | 8/25/2006 | Wire | Holmes, | Wire From Chicago Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 200,325.26 | $ - |
| No | Deposit | 8/28/2006 | 1199 | Diamant | Check from Muzzio Tallini, Esq. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 216,830.88 | $ - |

**Investment Exchange Group, LLC**
**Exchange Deposits into Matrix Capital Bank**
**August 4, 2006 to December 29, 2006**

* GREEN HIGHLIGHTS ARE CURRENT EXCHANGE VICTIMS

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| No | Deposit | 8/4/2006 | Wire | Crumple | Wire from Moulton Land Title | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 118,746.63 | $ - |
| No | Deposit | 8/28/2006 | Wire | Eng, San | Wire from Title Solutions Closing Services In | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 316,852.59 | $ - |
| No | Deposit | 8/28/2006 | Wire | Real Cou | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 120,488.58 | $ - |
| No | Deposit | 8/29/2006 | Wire | Barrett F | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 206,794.06 | $ - |
| No | Deposit | 8/29/2006 | Wire | Traynor, | Wire from Security Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 129,951.75 | $ - |
| Yes | Deposit | 8/29/2006 | Wire | Amari, P | Wire from Smith & Floyd | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 1,034.91 | $ - |
| No | Deposit | 8/30/2006 | Wire | Funderb | Wire from First Title Services | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 402,219.53 | $ - |
| No | Deposit | 8/30/2006 | 2E+09 | Hada, Ke | Overage check from Chicago Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,190.47 | $ - |
| No | Deposit | 8/30/2006 | Wire | Indigo S | Wire from First American Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 275,513.65 | $ - |
| No | Deposit | 8/30/2006 | Wire | R & R Gr | Wire from Alliance Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 234,619.15 | $ - |
| No | Deposit | 8/30/2006 | 1E+10 | Todd, Di | Check from Chicago Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 33,941.60 | $ 1,190.47 |
| No | Deposit | 8/30/2006 | Wire | Tuso De | Wire from Land Title Gurantee Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,050,000.00 | $ - |
| No | Deposit | 8/31/2006 | Wire | Corney, | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 113,869.81 | $ - |
| No | Deposit | 8/31/2006 | Wire | Gersche | Wire from Fairbanks Title Agency Inc. | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 131,304.88 | $ - |
| No | Deposit | 8/31/2006 | Wire | The Rich | Wire from Fidelity National Title | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 501,829.13 | $ - |
| No | Deposit | 8/31/2006 | Transfer | Worthin | Exchange Fee Refund from IXG | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 750.00 | $ - |
| No | Deposit | 9/1/2006 | Wire | Brooke I | Wire from Junction City Abstract Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 450,750.00 | $ - |
| No | Deposit | 9/1/2006 | 30516 | Dellepia | Check from Equitable Title Services LTD. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 73,902.87 | $ - |
| No | Deposit | 9/1/2006 | Wire | Emberna | Wire from Hawaii Escrow Title | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 327,010.89 | $ - |
| No | Deposit | 9/1/2006 | Wire | Jimenez, | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 28,906.22 | $ - |
| No | Deposit | 9/1/2006 | Wire | JMJC Fo | Wire from Stewart Title of Denver | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 659,143.36 | $ - |
| No | Deposit | 9/1/2006 | Wire | Lawrenc | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 400,000.00 | $ - |
| No | Deposit | 9/1/2006 | Wire | Lucero, I | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 28,906.22 | $ - |
| No | Deposit | 9/1/2006 | Wire | Murray, | Wire from Title Svcs of Southwest FL. | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 375,000.00 | $ - |
| No | Deposit | 9/1/2006 | 31613 | Pecoy, K | Check from Richard A. Brooslin, Attorney | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 199,188.75 | $ - |
| No | Deposit | 9/1/2006 | Wire | White, V | Wire from Denver Land Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 50,324.02 | $ - |
| Yes | Deposit | 9/1/2006 | Wire | Johnke, | Wire from Hugh C. Gregg II Iola Acct. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 220,749.00 | $ - |
| No | Deposit | 9/5/2006 | Wire | Dittmer, | Wire from County Abstract | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 62,659.73 | $ - |
| No | Deposit | 9/5/2006 | Wire | Gersche | Wire from Fairbanks Title Agency | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 263,709.54 | $ - |
| No | Deposit | 9/5/2006 | Wire | Mauldin | Wire from Pinnacle Title of Alabama | 2100 · Client Exchange Funds Payable | 20 - Pam Childs | Exch. Acct. 7071000025 | $ 79,185.84 | $ - |
| No | Deposit | 9/5/2006 | Wire | Molitor, | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 102,660.52 | $ - |
| No | Deposit | 9/5/2006 | Wire | Overton | Wire from Acquire Corporation | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,035,796.64 | $ - |
| No | Deposit | 9/6/2006 | Wire | McCasla | Wire From National Alliance Title Company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 155,246.42 | $ - |
| No | Deposit | 9/6/2006 | Wire | McCasla | Wire from National Alliance Title Company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 138,446.42 | $ - |
| No | Deposit | 9/6/2006 | Wire | Thomso | Wire from Title America | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 61,193.49 | $ - |
| No | Deposit | 9/6/2006 | 3E+08 | Windley | Check from Key Bank - Remaining Proceeds, | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 13,322.38 | $ - |
| No | Deposit | 9/7/2006 | Wire | Cruz, Da | Wire from Lione and Lee PC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 44,820.91 | $ - |
| No | Deposit | 9/7/2006 | Wire | Cruz, Da | Wire from Lione and Lee PC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 54,056.29 | $ - |
| No | Deposit | 9/7/2006 | Wire | Naylor, I | Wire from Alliance Title and Escrow | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 209,227.41 | $ - |
| No | Deposit | 9/8/2006 | Wire | Southwi | Wire from Robert and Martha Bunn Trust A | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,090,606.41 | $ - |
| Yes | Deposit | 9/8/2006 | Wire | Carestia, | Wire from Montana Abstract | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 713,166.33 | $ - |
| No | Deposit | 9/11/2006 | 1114 | Mustafa | Check from Philip C. Berg, Esq. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 31,007.52 | $ 270,365.39 |
| No | Deposit | 9/11/2006 | 1744 | Mustafa | Check from Samuel E. Eber, Esq. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 70,448.73 | $ 199,916.66 |
| No | Deposit | 9/11/2006 | 4E+09 | Mustafa | Check from Scott Eisenberg | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 84,916.66 | $ 115,000.00 |
| No | Deposit | 9/11/2006 | 4E+09 | Mustafa | Check from Scott Eisenberg | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 115,000.00 | $ - |
| No | Deposit | 9/12/2006 | Wire | Holmes, | Wire from Chicago Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 536,158.45 | $ - |
| No | Deposit | 9/12/2006 | Wire | Hospital | Wire from United Escrow | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 2,232,762.34 | $ - |
| No | Deposit | 9/13/2006 | Wire | Brown, E | Wire from Council Grove Farmers Drover | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 119,463.18 | $ - |
| No | Deposit | 9/13/2006 | Wire | DiDonna | Wire from Edison Title Service | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 110,967.24 | $ - |
| No | Deposit | 9/13/2006 | Wire | Hospital | Wire from Miners Bank of Iron River | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 250,000.00 | $ - |
| No | Deposit | 9/13/2006 | Wire | Petersor | Wire from Noble Title Services | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 18,824.37 | $ - |
| No | Deposit | 9/13/2006 | 1141 | R & R Gr | Check from Liet Tran - Note Payback | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 8,000.00 | $ - |

**Investment Exchange Group, LLC**
**Exchange Deposits into Matrix Capital Bank**
**August 4, 2006 to December 29, 2006**

* GREEN HIGHLIGHTS ARE CURRENT EXCHANGE VICTIMS

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No | Deposit | 8/4/2006 | Wire | Crumple | Wire from Moulton Land Title | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ | 118,746.63 | $ | - |
| Yes | Deposit | 9/13/2006 | Wire | Kelly, Bri | Wire from Network Title of Florida | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 107,022.72 | $ | - |
| No | Deposit | 9/14/2006 | Wire | Franklin, | Wire from Krause and Baxter | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 71,846.86 | $ | - |
| No | Deposit | 9/14/2006 | Wire | Fraser H | Wire from Allegiance Title of Florida | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 98,538.21 | $ | - |
| No | Deposit | 9/14/2006 | Wire | Hospital | wire from United Escrow Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 16,420.16 | $ | - |
| No | Deposit | 9/14/2006 | Wire | Moss, M | Wire from Hawaii Escrow Title Inc. | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ | 1,535,755.60 | $ | - |
| Yes | Deposit | 9/14/2006 | Wire | Adkissor | Wire from Title America | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 389,575.57 | $ | - |
| Yes | Deposit | 9/14/2006 | Wire | Allen Re | Wire from Old Republic Title Insurance | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 1,010,123.92 | $ | - |
| Yes | Deposit | 9/14/2006 | Wire | Allen Re | Wire from Old Republic Title Insurance | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 983,585.05 | $ | - |
| No | Deposit | 9/15/2006 | 37734 | Calvin, A | Check from Chicago Title Inc. Co. (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 33.50 | $ | 596,952.36 |
| No | Deposit | 9/15/2006 | 4-14430 | Emberna | Check from Hawaii Escrow & Title, Inc. | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ | 16,437.50 | $ | 580,514.86 |
| No | Deposit | 9/15/2006 | Wire | Jack D. P | Wire from Amerititle Medford Branch | 2100 · Client Exchange Funds Payable | 65 - Bobby Parks | Exch. Acct. 7071000025 | $ | 242,078.34 | $ | - |
| No | Deposit | 9/15/2006 | Wire | Li-Mach, | Wire from United Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 817,805.55 | $ | - |
| No | Deposit | 9/15/2006 | Wire | Pellini, G | Wire from L. Morris Glucksman | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 110,003.07 | $ | - |
| No | Deposit | 9/15/2006 | Transfer | Popejoy, | Refund TaXadvantage Fee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 15.00 | $ | - |
| No | Deposit | 9/15/2006 | 1181 | R & R Gr | Check from Liet Tran - Note Payback | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 8,000.00 | $ | - |
| No | Deposit | 9/15/2006 | Wire | Ranallo, | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 718,743.05 | $ | - |
| No | Deposit | 9/15/2006 | Wire | Self, Dav | Wire from Fifth Third Cin. | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 136,694.39 | $ | - |
| No | Deposit | 9/15/2006 | 14789 | Shadow | Check from Austin Escrow & Title, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 580,504.86 | $ | - |
| No | Deposit | 9/15/2006 | Wire | Ward, Cl | Wire from Security Title Guaranty Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 24,562.77 | $ | - |
| No | Deposit | 9/15/2006 | Wire | Wheeler | Wire from Chicago Title Co. | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ | 575,022.94 | $ | - |
| Yes | Deposit | 9/15/2006 | 9E+07 | Johnke, | Check from Stewart Title of Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 10.00 | $ | 580,504.86 |
| No | Deposit | 9/18/2006 | Wire | Behrs, Tl | Wire from First American Title Company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 371,147.21 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Dawe, B | Wire from Fitzpatric Lentz Bubba PC | 2100 · Client Exchange Funds Payable | 20 - Pam Childs | Exch. Acct. 7071000025 | $ | 303,830.45 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Hogaboo | Wire from Fitzpatrick Lentz Bubba PC | 2100 · Client Exchange Funds Payable | 20 - Pam Childs | Exch. Acct. 7071000025 | $ | 303,830.45 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Mechlin | Wire from Title Co. of the Rockies, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 173,836.25 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Ogilive, I | Wire from JM Title Corp. | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 93,230.72 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Sattler, T | Wire from American National Bank | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 181,562.50 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Siler, Bu | Wire from Fidelity National Title of CO. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 400,000.00 | $ | - |
| No | Deposit | 9/18/2006 | Wire | Wieder, | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 124,145.34 | $ | - |
| No | Deposit | 9/19/2006 | Wire | Bowler, | Wire from First AMerican Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 264,065.71 | $ | - |
| No | Deposit | 9/19/2006 | Wire | Brugman | Wire from Title Security Agency of AZ | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 396,379.98 | $ | - |
| No | Deposit | 9/19/2006 | Wire | James C. | Wire from Executive Title of Colorado | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 426,141.74 | $ | - |
| No | Deposit | 9/19/2006 | Wire | James C. | Wire from Executive Title Ins. Services | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 426,141.74 | $ | - |
| No | Deposit | 9/19/2006 | Wire | Wilkerso | Wire from Safe Harbor Title | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 101,210.98 | $ | - |
| No | Deposit | 9/20/2006 | Wire | Andrus, | Wire from Quantum Title, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 23,212.84 | $ | - |
| No | Deposit | 9/20/2006 | 2E+07 | Giann, G | Check from First American Heritage (Overag | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 301.22 | $ | 686.15 |
| No | Deposit | 9/20/2006 | 27847 | Indigo Sp | Check from Land America (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 686.15 | $ | - |
| No | Deposit | 9/20/2006 | Wire | Kirschen | Wire from First AMerican Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 488,657.04 | $ | - |
| No | Deposit | 9/20/2006 | Wire | Kirschen | Wire from First AMerican Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 488,657.04 | $ | - |
| No | Deposit | 9/20/2006 | Wire | Kornmes | Wire from Security First Title Partners | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ | 115,461.84 | $ | - |
| No | Deposit | 9/20/2006 | Wire | Maan, Si | Wire from First American Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 276,361.41 | $ | - |
| No | Deposit | 9/20/2006 | Wire | Staab Fa | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 112,120.71 | $ | - |
| No | Deposit | 9/20/2006 | Wire | The Colv | Wire from Mayo Crowe, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 743,256.03 | $ | - |
| No | Deposit | 9/21/2006 | Wire | 3-B Asso | Wire from First American Title | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 875,796.74 | $ | - |
| No | Deposit | 9/22/2006 | Wire | McGiver | Wire from Title company of the Rookies | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 126,839.00 | $ | - |
| No | Deposit | 9/22/2006 | 4E+09 | Swansor | Check from First American Title (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 18.00 | $ | - |
| Yes | Deposit | 9/22/2006 | Wire | Parkwoc | Wire from Equity Title Agency, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 5,488,539.21 | $ | - |
| Yes | Deposit | 9/22/2006 | Wire | Thomas | Wire from Land Title Guarantee Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 212,726.15 | $ | - |
| No | Deposit | 9/25/2006 | 4E+07 | Fowler, I | Check from American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ | 35,758.28 | $ | 459.38 |
| No | Deposit | 9/25/2006 | Wire | McWillia | Wire from All Florida Title & Escrow | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ | 402,613.12 | $ | - |
| No | Deposit | 9/25/2006 | Wire | Point Ca | Wire from Unified Title | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ | 104,292.21 | $ | - |

**Investment Exchange Group, LLC**
**Exchange Deposits into Matrix Capital Bank**
**August 4, 2006 to December 29, 2006**

* GREEN HIGHLIGHTS ARE CURRENT EXCHANGE VICTIMS

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| No | Deposit | 8/4/2006 | Wire | Crumple | Wire from Moulton Land Title | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 118,746.63 | $ - |
| No | Deposit | 9/25/2006 | Wire | South Ui | Wire from North American Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 214,048.71 | $ - |
| No | Deposit | 9/25/2006 | 67740 | Todd, Di | Check from Equity Link I, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 459.38 | $ - |
| No | Deposit | 9/26/2006 | Wire | Gruber, | Wire from JM Title Corp | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 52,033.31 | $ - |
| No | Deposit | 9/26/2006 | Wire | Wong, J | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 115,373.05 | $ - |
| No | Deposit | 9/27/2006 | Wire | GS Copp | Wire from Ameripoint Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 705,652.71 | $ - |
| No | Deposit | 9/28/2006 | Transfe | Garner, | Refund of Exchange Fee per Scott | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 250.00 | $ - |
| No | Deposit | 9/28/2006 | Wire | Shigei, T | Wire from Land Title Guarantee Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 86,437.32 | $ - |
| No | Deposit | 9/29/2006 | Wire | Cline, Ti | Wire from Title Security Agency of AZ | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 111,765.29 | $ - |
| No | Deposit | 9/29/2006 | Wire | Cota, Mi | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 131,966.31 | $ - |
| No | Deposit | 9/29/2006 | Wire | Duran, J | Wire from Security Title Guaranty Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 26,167.58 | $ - |
| No | Deposit | 9/29/2006 | Wire | Ehrlich, | Wire from Fidelity National Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 324,754.76 | $ - |
| No | Deposit | 9/29/2006 | Wire | Ifft, Bruc | Wire from Johnson County Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 73,454.06 | $ - |
| No | Deposit | 9/29/2006 | Wire | Moldenl | Wire from Financial Title Company | 2100 · Client Exchange Funds Payable | 77 - Steve Sidars | Exch. Acct. 7071000025 | $ 254,000.00 | $ - |
| No | Deposit | 9/29/2006 | Wire | Pellini, G | Wire from L. Morris Glucksman | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 132,569.92 | $ - |
| No | Deposit | 9/29/2006 | Wire | Rutherfu | Wire from Prestige Escrow & Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 240,391.78 | $ - |
| No | Deposit | 9/29/2006 | Wire | Sawyer, | Wire from G Carroll Palmatary | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 204,554.40 | $ - |
| No | Deposit | 9/29/2006 | Wire | The Brer | Wire from Grand County Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 272,285.29 | $ - |
| No | Deposit | 9/29/2006 | Wire | Todd, Di | Wire from Chicago Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 29,958.20 | $ - |
| No | Deposit | 9/29/2006 | Wire | Vennett | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 66,530.02 | $ - |
| No | Deposit | 9/29/2006 | Wire | Watrous | Wire from Liberties Abstract LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 442,210.86 | $ - |
| No | Deposit | 9/29/2006 | Wire | Wegher, | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 42,199.61 | $ - |
| Yes | Deposit | 9/29/2006 | Wire | Royal Ga | Wire from Security Title Guaranty Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 250,316.78 | $ - |
| Yes | Deposit | 9/29/2006 | Wire | Royal Ga | Wire from Security Title Guaranty | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 250,467.58 | $ - |
| No | Deposit | 10/2/2006 | Wire | Amherst | Wire from Title America | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 122,693.15 | $ - |
| No | Deposit | 10/2/2006 | 1E+09 | Aspen W | Check from Chicago Title - Recording Fee (B | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 141.00 | $ - |
| No | Deposit | 10/2/2006 | Wire | Putnam, | Wire from First American Heritage Title Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 29,209.53 | $ - |
| No | Deposit | 10/2/2006 | Wire | Ruppratl | Wire from Jennifer D Humble | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 112,944.11 | $ - |
| No | Deposit | 10/3/2006 | Wire | Brooke I | Wire from Junction City Abstract Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 81,265.16 | $ - |
| No | Deposit | 10/4/2006 | 14939 | Perdew, | Check from Autin Escrow & Title, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 197,582.93 | $ - |
| No | Deposit | 10/4/2006 | Wire | TV Sunb | Wire from Sunbelt Title Agency | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 40,524.62 | $ - |
| No | Deposit | 10/5/2006 | Wire | ARI-CBP | Wire from Stewart Title Company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 542.50 | $ - |
| No | Deposit | 10/5/2006 | Wire | Big Star | Wire from Title America | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 51,471.38 | $ - |
| No | Deposit | 10/5/2006 | Wire | Finegan, | Wire from Alliance Title and Escrow Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 211,847.07 | $ - |
| No | Deposit | 10/5/2006 | Wire | Highland | Wire from First American Heritage Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 9,717,926.82 | $ - |
| No | Deposit | 10/5/2006 | Wire | MELV-11 | Wire from Pickford Escrow Co. Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 395,397.49 | $ - |
| No | Deposit | 10/5/2006 | Wire | MELV-21 | Wire from Pickford Escrow Co. Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 355,711.21 | $ - |
| No | Deposit | 10/5/2006 | Wire | Tri-City L | Wire from Smith & Floyd | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 600,000.00 | $ - |
| No | Deposit | 10/6/2006 | Wire | Awmillei | Wire from United Title Company, Inc. | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 286,073.68 | $ - |
| No | Deposit | 10/6/2006 | Wire | Harsch, ( | Wire from Guardian Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 253,545.38 | $ - |
| No | Deposit | 10/6/2006 | Wire | Shortrid; | Wire from Security Title Guaranty Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 155,461.70 | $ - |
| No | Deposit | 10/6/2006 | Wire | Wright, I | Wire from Smith & Floyd | 2100 · Client Exchange Funds Payable | 80 - Mike Wright | Exch. Acct. 7071000025 | $ 45,551.76 | $ - |
| No | Deposit | 10/10/2006 | Wire | Ihrig, Jo | Wire from First American Heritage | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 309,198.64 | $ - |
| No | Deposit | 10/10/2006 | Wire | Jones, M | Wire from J Stuart McGowan | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 217,261.10 | $ - |
| No | Deposit | 10/10/2006 | Wire | Reile, Ru | Wire from Gillette Title Services | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 358,777.00 | $ - |
| No | Deposit | 10/10/2006 | Wire | Rhoades | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 129,789.71 | $ - |
| No | Deposit | 10/11/2006 | Wire | Bobchak | Wire from Satilla Community Bank | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 32,957.30 | $ - |
| No | Deposit | 10/11/2006 | Wire | Gee-Jay | Wire from First American Heritage Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 708,294.56 | $ - |
| No | Deposit | 10/11/2006 | Wire | Higbee, | Wire from Satilla Community Bank | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 29,390.52 | $ - |
| No | Deposit | 10/11/2006 | Wire | McManu | Wire from Madison Settlement Services | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 197,731.08 | $ - |
| No | Deposit | 10/11/2006 | Wire | Stover, J | Wire from Satilla Community Bank | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 130,020.00 | $ - |
| No | Deposit | 10/11/2006 | Wire | Watts, K | Wire from Grand County Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 104,364.60 | $ - |

**Investment Exchange Group, LLC**
**Exchange Deposits into Matrix Capital Bank**
**August 4, 2006 to December 29, 2006**

* GREEN HIGHLIGHTS ARE CURRENT EXCHANGE VICTIMS

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No | Deposit | 8/4/2006 | Wire | Crumple | Wire from Moulton Land Title | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 118,746.63 | $ - |
| No | Deposit | 10/12/2006 | Wire | Krone, J | Wire from Nicholas Newman Logan | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 116,350.72 | $ - |
| No | Deposit | 10/12/2006 | Wire | SanMate | Wire from First American Title Insurance | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 127,225.60 | $ - |
| No | Deposit | 10/12/2006 | Trans | Shuman | Transfer from Susan Zinn - 50% split from P | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 31,481.40 | $ - |
| No | Deposit | 10/12/2006 | Wire | Stover, J | Wire from Smith & Floyd | 2100 · Client Exchange Funds Payable | 45 - Ron Stallings | Exch. Acct. 7071000025 | $ 92,628.25 | $ - |
| No | Deposit | 10/12/2006 | Wire | The Chri | Wire from Empire Title | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 211,277.96 | $ - |
| No | Deposit | 10/12/2006 | Wire | Zinn, Su | Wire from First American Title Insurance | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 62,962.80 | $ - |
| No | Deposit | 10/13/2006 | Wire | Agramo | Wire from SRS Title Services | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 42,993.27 | $ - |
| No | Deposit | 10/13/2006 | Wire | Divot Tw | Wire from North American Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,180,696.87 | $ - |
| No | Deposit | 10/13/2006 | Wire | MHM, Ll | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 680,470.08 | $ - |
| No | Deposit | 10/13/2006 | 1036 | R & R Gr | Check from R & R Greene Enterprises, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 7,875.00 | $ - |
| No | Deposit | 10/16/2006 | Wire | Divot Tw | Wire from North American Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 535.42 | $ - |
| No | Deposit | 10/16/2006 | Wire | Dullard, | Wire from Executive Title Insurance | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 275,607.81 | $ - |
| No | Deposit | 10/16/2006 | Wire | Gruber, | Wire from JM Title Corporation | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 72,938.56 | $ - |
| No | Deposit | 10/16/2006 | Wire | Hart, Do | Wire from Security Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 155,000.00 | $ - |
| No | Deposit | 10/16/2006 | Wire | Marty F | Wire from LandAmerica National Comm. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 4,555,968.98 | $ - |
| Yes | Deposit | 10/16/2006 | Wire | Schafer, | Wire from Lehigh Title | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 48,628.96 | $ - |
| No | Deposit | 10/17/2006 | Wire | Garner & | Wire from Grand Canyon Title Agency, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 27,500.00 | $ - |
| No | Deposit | 10/18/2006 | 2E+08 | Cline, Ti | Check from Chicago Title Insurance (Overag | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 136.24 | $ 8,000.00 |
| No | Deposit | 10/18/2006 | Wire | Munch, | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 113,989.12 | $ - |
| No | Deposit | 10/18/2006 | Wire | Piraneo, | Wire from Accurate Closing, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 76,044.66 | $ - |
| No | Deposit | 10/18/2006 | 1216 | R & R Gr | Check from Liet Tran - Note Payback | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 8,000.00 | $ - |
| No | Deposit | 10/18/2006 | Wire | Taylor, N | Wire from Peggy L. Carry, Attorney @ Law | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 457,860.92 | $ - |
| No | Deposit | 10/19/2006 | Wire | Trambar | Wire from Ward Taylor, LLC | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 55,236.62 | $ - |
| No | Deposit | 10/20/2006 | Wire | Anderso | Wire from Central Colorado Title Escrow | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 140,884.19 | $ - |
| No | Deposit | 10/20/2006 | Wire | Crumple | Wire from Dolphin I LLLP | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 599,291.70 | $ - |
| No | Deposit | 10/20/2006 | Wire | Crumple | Wire From Dolphin I LLLP | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 500.00 | $ - |
| No | Deposit | 10/20/2006 | Wire | Hoffman | Wire from Masters Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 53,037.66 | $ - |
| No | Deposit | 10/20/2006 | Wire | Luk, Anit | Wire from Blair C. Strain, PC | 2100 · Client Exchange Funds Payable | 20 - Pam Childs | Exch. Acct. 7071000025 | $ 250,000.00 | $ - |
| No | Deposit | 10/20/2006 | 105459 | Shigei, T | Check from Fidelity National Title (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 0.13 | $ - |
| Yes | Deposit | 10/23/2006 | Wire | KHR Hol | Wire from Sutton Land 1031 Corp. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 2,438,404.40 | $ - |
| Yes | Deposit | 10/23/2006 | Wire | Lambers | Wire from Security Title Guaranty company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 218,691.72 | $ - |
| No | Deposit | 10/24/2006 | Wire | Garner & | Wire from Grand Canyon Title Agency | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 61,135.25 | $ - |
| No | Deposit | 10/24/2006 | Wire | Giann, G | Wire from Chicago Title of Colorado | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 167,396.76 | $ - |
| Yes | Deposit | 10/24/2006 | Wire | KHR Hol | Wire from Rothkrug Rothkrug | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,048,531.24 | $ - |
| Yes | Deposit | 10/24/2006 | Wire | KHR Hol | Wire from Sovereign Bank - Multi Family CR | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 2,751,460.84 | $ - |
| No | Deposit | 10/25/2006 | 65859 | Amherst | Check from Title America (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 139.33 | $ - |
| No | Deposit | 10/25/2006 | 17910 | Chambe | Check from Austin Escrow & Title (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 31.37 | $ 4,608.36 |
| No | Deposit | 10/25/2006 | 18936 | Chambe | Check from Austin Escrow & Title (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 82.98 | $ 4,525.38 |
| No | Deposit | 10/25/2006 | 9E+07 | Giann, G | Check from Stewart Title (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 5.00 | $ - |
| No | Deposit | 10/25/2006 | 46917 | Holmes, | Check from Wick & Maddocks (Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 4,525.38 | $ - |
| No | Deposit | 10/25/2006 | Wire | O'Donne | Wire from FNT Bk of America | 2100 · Client Exchange Funds Payable | 17 - Edward & Emy Guro | Exch. Acct. 7071000025 | $ 308,329.60 | $ - |
| No | Deposit | 10/25/2006 | Wire | R & R Gr | Wire from Alliance Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 26,700.78 | $ - |
| No | Deposit | 10/25/2006 | 9E+07 | Richards | Check from Stewart Title (Water/Sewer Ref | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 125.86 | $ 5.00 |
| No | Deposit | 10/25/2006 | Wire | Subia, F | Wire from Hawaii Escrow Title | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 100,827.29 | $ - |
| No | Deposit | 10/26/2006 | Wire | Harringt | Wire from LandAmerica Financial | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,600,000.00 | $ - |
| No | Deposit | 10/26/2006 | Wire | Vetter, F | Wire from Land Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 78,835.27 | $ - |
| Yes | Deposit | 10/26/2006 | Wire | Ogilvie, I | Wire from JM Title Corp | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 83,376.20 | $ - |
| Yes | Deposit | 10/26/2006 | Wire | Ward En | Wire from Land Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 3,341,621.99 | $ - |
| No | Deposit | 10/30/2006 | Wire | Roberts, | Wire from LandAmerica Financial | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 235,813.07 | $ - |
| No | Deposit | 10/30/2006 | Transfer | Vetter, F | Partial Exchange Fee Refund | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 200.00 | $ - |
| No | Deposit | 10/31/2006 | Wire | Couture, | Wire from Vermont Bar Foundation IOLTA | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 34,763.01 | $ - |

**Investment Exchange Group, LLC**
**Exchange Deposits into Matrix Capital Bank**
**August 4, 2006 to December 29, 2006**

* GREEN HIGHLIGHTS ARE CURRENT EXCHANGE VICTIMS

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| No | Deposit | 8/4/2006 | Wire | Crumple | Wire from Moulton Land Title | 2100 · Client Exchange Funds Payable | 60 - Ron Stefanik | Exch. Acct. 7071000025 | $ 118,746.63 | $ - |
| No | Deposit | 10/31/2006 | Wire | Gardner | Wire from First American Heritage | 2100 · Client Exchange Funds Payable | 85 - Dustin Braisted | Exch. Acct. 7071000025 | $ 26,750.00 | $ - |
| No | Deposit | 10/31/2006 | Wire | Hurleba | Wire from Title Company of the Rockies | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 200,593.51 | $ - |
| No | Deposit | 11/1/2006 | Wire | Fangmai | Wire from Sterart Title of Larimar | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 358,887.14 | $ - |
| No | Deposit | 11/1/2006 | Wire | Flanders | Wire from Metro Denver Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 197,946.21 | $ - |
| No | Deposit | 11/1/2006 | Wire | Keil Grai | Wire from Escrow, Inc. in Grand County | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 440,000.00 | $ - |
| No | Deposit | 11/1/2006 | Wire | Knott, D | Wire from Title America | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 420,175.15 | $ - |
| No | Deposit | 11/1/2006 | Wire | Koenige | Wire from Vermont Bar Foundation | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 129,419.25 | $ - |
| No | Deposit | 11/1/2006 | Wire | Ward, N | Wire from National Title Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 143,386.96 | $ - |
| Yes | Deposit | 11/2/2006 | Wire | Burchfie | Wire from Great Plains Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 561,426.95 | $ - |
| No | Deposit | 11/6/2006 | Wire | 7655 Mc | Wire from Ameripoint Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 406,467.33 | $ - |
| No | Deposit | 11/6/2006 | Wire | Cholak, I | Wire from Landamerica Fin Group | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 101,698.31 | $ - |
| Yes | Deposit | 11/6/2006 | Wire | Coyle, M | Wire from Your Home Team Real Estate | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 348,973.81 | $ - |
| No | Deposit | 11/7/2006 | Wire | Bell, Ste | Wire from Land Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 44,523.70 | $ - |
| No | Deposit | 11/7/2006 | Wire | Cholak, I | Wire from LandAmerica Financial | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 14,487.50 | $ - |
| No | Deposit | 11/7/2006 | Wire | Lindquis | Wire from Landamerica Financial | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 318,639.45 | $ - |
| No | Deposit | 11/7/2006 | Wire | Royston, | Wire from First American Heritage | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 342,633.92 | $ - |
| No | Deposit | 11/8/2006 | Wire | Algoso, I | Wire from Hawaii Escrow & Title | 2100 · Client Exchange Funds Payable | 50 - Ron Lunsford | Exch. Acct. 7071000025 | $ 117,285.11 | $ - |
| No | Deposit | 11/8/2006 | Wire | Carol Le | Wire from The Title Co of Delta Cnty | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 85,485.87 | $ - |
| No | Deposit | 11/8/2006 | Wire | Irvin J Gi | Wire from Patagonia Trust Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 187,346.34 | $ - |
| No | Deposit | 11/9/2006 | wire | Maisog, | Wire from Mid-Atlantic Title Co | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 930,177.83 | $ - |
| No | Deposit | 11/10/2006 | Wire | PTK Buil | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 799,989.25 | $ - |
| No | Deposit | 11/10/2006 | Wire | Treece, I | Wire from Land Title Guarantee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 213,765.04 | $ - |
| No | Deposit | 11/13/2006 | Wire | Neville, I | Wire from Lawyers Title of Arizona, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 51,282.07 | $ - |
| No | Deposit | 11/14/2006 | Wire | Moore, I | Wire from Nevada Title Co Trust | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 234,179.53 | $ - |
| No | Deposit | 11/15/2006 | 2001 | Hospitali | Check from Desert Mojave View, LLC (princi | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 873,624.76 | $ 13,490.90 |
| No | Deposit | 11/15/2006 | 2001 | Hospitali | Check from Desert Mojave View, LLC (Intere | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 13,490.90 | $ - |
| No | Deposit | 11/16/2006 | Wire | Denso, I | Wire from Texas American Title Company | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 448,776.22 | $ - |
| No | Deposit | 11/16/2006 | Wire | Gross, A | Wire from Bay Title | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 172,714.88 | $ - |
| No | Deposit | 11/17/2006 | Transfer | Dullard, | Transfer from IXG (Robert Dullard) | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 275,000.00 | $ - |
| No | Deposit | 11/17/2006 | 1244 | R & R Gr | Check from Liet Tran | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 8,000.00 | $ - |
| Yes | Deposit | 11/17/2006 | Wire | Hoh, Cla | Wire from Title Professionals of Florida | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 367,247.02 | $ - |
| Yes | Deposit | 11/17/2006 | Wire | Ranco Pi | Wire from Landamerica | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,665,072.48 | $ - |
| No | Deposit | 11/20/2006 | Wire | Nelson, | Wire fron First Amer. Heritage Title Co. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 174,113.74 | $ - |
| No | Deposit | 11/21/2006 | Wire | Tsao, Ric | Wire from Lawyers Title Insurance | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 90,541.81 | $ - |
| No | Deposit | 11/21/2006 | Wire | Wyomin | Wire from Wyoming Land and Title | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 497,783.40 | $ - |
| Yes | Deposit | 11/21/2006 | Wire | Sheikh-A | Wire from Chicago Title of Colorado | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 73,858.89 | $ - |
| No | Deposit | 11/22/2006 | 2E+07 | Pottle, J | Check from First Amer. Heritage Title Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 1,488.28 | $ 91,432.67 |
| No | Deposit | 11/22/2006 | 2E+07 | Pottle, J | Check from First Amer. Heritage Title Co | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 91,432.67 | $ - |
| No | Deposit | 11/27/2006 | Wire | 7655 Mc | Wire from Ameripoint Title (P1 Overage) | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 3,594.74 | $ - |
| No | Deposit | 11/27/2006 | Wire | Hancock | Wire from Stotler & Stotler | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 147,898.54 | $ - |
| No | Deposit | 11/27/2006 | Transfer | Irvin J Gi | Refund Exchange Fee | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 750.00 | $ - |
| No | Deposit | 11/27/2006 | 1-21842 | SanMate | Check from Pioneer Title Company (Overage | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 500.00 | $ - |
| No | Deposit | 11/27/2006 | Wire | Scan Ser | Wire from Neil S. Schecht (Return of EM) | 2100 · Client Exchange Funds Payable | 25 - Lissy Perez-Arche | Exch. Acct. 7071000025 | $ 50,000.00 | $ - |
| Yes | Deposit | 11/28/2006 | Wire | Navarro, | Wire from Merit Escrow Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 90,381.06 | $ - |
| No | Deposit | 11/29/2006 | Wire | Koehler, | Wire from 1st Denver Title Inc | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 216,895.19 | $ - |
| No | Deposit | 11/29/2006 | Wire | Melnick, | Wire from Prestige Escrow | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 95,460.04 | $ - |
| Yes | Deposit | 11/29/2006 | 2621 | Coyle, M | Check from Your Home Team RE, Inc. (Relea | 2100 · Client Exchange Funds Payable | 15 - Ken Garrison | Exch. Acct. 7071000025 | $ 1,500.00 | $ - |
| No | Deposit | 11/30/2006 | Wire | Badovin | Wire from Licata Escrow Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 67,399.72 | $ - |
| No | Deposit | 11/30/2006 | Wire | Badovin | Wire from Licata Escrow Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 30,503.65 | $ - |
| No | Deposit | 11/30/2006 | Wire | Lafayett | Wire from Vermont Bar Foundation | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 184,861.28 | $ - |
| No | Deposit | 11/30/2006 | Wire | Rowles, | Wire from Summit Financial Center, Inc. | 2100 · Client Exchange Funds Payable | 10 - IXG Corporate | Exch. Acct. 7071000025 | $ 83,707.65 | $ - |