By:  Shamrock Holdings Group, LLC
Member

By: _____
Chad J. Greenberg, Assistant Manager

Guy Gibson
_____

Tax ID No. _____

EXHIBIT A

**Relinquished Property Address / Legal Description**
TBD

RICH-E-2397936

**EXHIBIT B**

**Property Address**
**5318 Caribou Springs Trail, Longmont, Colorado**
**Legal Description**
**See Attached Exhibit "A"**



Investment Exchange Group, LLC

Corporate Office: 650 South Cherry Street, Suite 920  Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448  www.ixg1031.com
Nationwide Toll Free: 800.908.1031

RICH-E-2397937

# ASSIGNMENT OF
# CONTRACT TO BUY AND SELL REAL ESTATE
# FOR REPLACEMENT PROPERTY
### (5318 Caribou Springs Trail, Longmont, Colorado)

This agreement is entered into by and between Tong Investment, LLC, a Colorado limited liability company (hereinafter called Purchaser,) Guy Gibson, (hereinafter called Exchanger) and Seller (hereinafter referred to as Seller).

**WITNESSETH:**

**Whereas** Exchanger entered into that certain Contract to Buy and Sell Real Estate dated November 20, 2005, with Seller and Exchanger as Purchaser. This agreement, together with any and all amendment thereof (collectively called the Agreement), and is incorporated herein by this reference; and

**Whereas** in said Agreement, the Seller agreed to cooperate in the exchange in order for the subject transaction to qualify for Exchanger as part of a tax deferred exchange under Section 1031 of the Internal Revenue Code of 1986; and

**Whereas** Purchaser and Exchanger have executed a Real Estate Acquisition and Qualified Exchange Accommodation Agreement (QEAA) in which Purchaser has agreed to purchase the real property as outlined in the Agreement; and

**Whereas** Purchaser agrees to assume and perform Exchanger's obligations under the Agreement through its QEAA with Purchaser;

**NOW, THEREFORE**, the parties agree:

    1.      Exchanger hereby assigns to Purchaser Exchanger's right, title and interest in, and the Exchanger's obligations under the Agreement.

RICH-E-2397938

Page 2

2. Purchaser hereby assumes the Exchanger's rights, title and interest in, and the Exchanger's obligations under the Agreement.

3. Seller hereby consents to the Exchanger's assignment to Purchase and Purchaser's assumption of the Exchanger's rights, title and interest in, and the Exchanger's obligations under the Agreement.

**IN WITNESS WHEREOF**, the parties have executed this agreement as their free and voluntary act and deed, on the date indicated by each signature.

**PURCHASER:**                                          **EXCHANGER:**
TONG Investment, LLC
BY:  Shamrock Holdings Group, LLC,
Member

By: _____          _____
Chad J. Greenberg, CPA/PFS, CES              Guy Gibson
Assistant Manager

_____December 8, 2005_____          _____
Date                                                    Date



**Investment Exchange Group, LLC**

Corporate Office: 650 South Cherry Street, Suite 920  Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448   www.ixg1031.com
Nationwide Toll Free: 800.908.1031

**NOTIFICATION**
For Reverse Exchanges

RICH-E-2397939

To:     Guy Gibson

Re:     Reverse Exchange -- Safe Harbor

**Safe Harbor/Non-Safe Harbor Reverse:**
In September of 2000, the IRS issued a new reverse exchange ruling.  Revenue Procedure 2000-37 is a "safe harbor" ruling: this means that if you follow all of its requirements, the IRS agrees that they will not challenge your exchange.

The most important part of this ruling is that it requires you to identify to us the property you wish to sell within 45 days from the closing of the purchase of the new property.   In addition, you must close the sale of your relinquished (old) property and complete the exchange within 180 days.

If you fall outside the 180-day requirement, your exchange won't necessarily be disallowed, but it could be attacked by the IRS and disallowed.

We have prepared the documents for your reverse exchange to follow the format required by the IRS ruling.  By signing this form and returning it to us, you acknowledge that you understand that the protection of the IRS ruling will end on the 180th day after the replacement (new) property is purchased.

**Insurance Requirements:**
This is your notification that you must provide fire, flood and liability insurance on 5318 Caribou Springs Trail, Longmont, Colorado, purchased on your behalf in the name of Tong Investment, LLC, as part of the Reverse 1031 Exchange.  You may take this policy out in your name and simply add Tong Investment, LLC, as an additional insured on the policy as part of the Construction Leasehold 1031 Exchange.  It is your responsibility to secure appropriate coverage. It is understood and agreed by signing of this notification that you bear full burden and responsibility for all insurance pertaining to this property. Therefore, please provide Steve Chacon of our office with the following information on or before closing:

Insurance Company:_____     Policy No._____
Agent:_____     Telephone:_____

**HAVE YOUR INSURANCE AGENT FAX A BINDER TO US ON OR BEFORE CLOSING. Please be sure that both the EAT and the Exchanger are listed as Insured Parties on the subject property.**

**Expense Requirements:**
**Since there is a Triple Net Lease** in place between Exchanger and EAT, then only the mortgage payments and tax bills shall be processed through the EAT's checking account.

**Banking Requirements:**
In order to facilitate your exchange it is necessary for Investment Exchange Group, LLC (IXG) to open a checking account in the name of Tong Investment, LLC, a Colorado limited liability company.   This account will be used to conduct all financial business associated with the

RICH-E-2397940

property. The fees outlined below will be deducted from your $200 security deposit and the remaining balance will be refunded to you at the conclusion of this reverse exchange.

*Fees associated with the account may include:*

- Standard Bank fee: $7.50 service charge per month.
- Overnight mailing and wire fees
- Depending upon activity and the needs of your exchange, it may be necessary to increase the balance requirement and/or look to you for additional funds during the life of your exchange.

If you have any questions regarding these fees, please call Stephen Chacon at 303.331.1031.

Very truly yours,

Stephen C. Chacon
Reverse Exchange Consultant

**Acknowledgement:**
I hereby certify that I have received a copy of this notification and understand and agree with the above conditions.

_____
Guy Gibson

_____
Date



Investment Exchange Group, LLC

Corporate Office: 650 South Cherry Street, Suite 920  Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448  www.ixg1031.com
Nationwide Toll Free: 800.908.1031

December 8, 2005

Mike Smith
Washington Mutual
Cell: 303-332-3200

RICH-E-2397941

Office: 303-440-3533

Re:    Guy Gibson/Tong Investment, LLC
       5318 Caribou Springs Trail, Longmont, Colorado:

Dear Mike:

Please be advised that the purchase of the above property will involve a Reverse 1031 Exchange.  Tong Investment, LLC (EAT) will be taking title to this property as the exchange accommodation titleholder for Guy Gibson (Exchanger) under Section 1031 of the Internal Revenue Code.  The EAT will be the titleholder of the property and will hold the property for the Exchanger until such time as their sale has taken place.  The Note and corresponding security instrument should be in the name of the EAT.

In this type of reverse exchange, the Note and corresponding security instrument must be in the name of the EAT only.  The Exchanger may personally guarantee your loan.  However, the Note **must contain a non-recourse clause for the EAT**.  Below is a **sample** of what you may be placed within the body of the Note:

> Borrower shall not be personally liable on this Note, and the Note Holder agrees to look solely to the property securing this Note for payment in the event of default hereunder, hereby waiving any and all rights to a personal judgment against Borrower on this Note.

Enclosed, for your information, are the EAT's organizational documents , and those of its sole member, Shamrock Holdings Group, LLC, a Colorado limited liability company (EIN 37-1438464).  The Borrower on the loan documents must be listed as "Tong Investment, LLC, a Colorado limited liability company."  The Borrower address is:

           Tong Investment, LLC
           c/o Investment Exchange Group
           650 South Cherry Street, Suite 920
           Denver, CO  80246

Following is the signature block for Tong Investment, LLC.
           Tong Investment, LLC
           By: Shamrock Holdings Group, LLC
           Member

           By: _____
           Chad J. Greenberg, CPA/PFS, CES, Assistant Manager

Our legal counsel and bank regulator have determined that under the CIP (Client Identification Program) effective October 1, 2003, with respect to the U.S. Patriot Act of October 1, 2001,

RICH-E-2397942

identification of the EAT and it's sole member is accomplished with the EIN, operating agreement and Certificate of Good Standing for both Shamrock Holdings Group, LLC and the EAT.  We have been advised by legal counsel, that if any other documentation is requested, then to match the lender's interpretation of responsibility, the same documentation will be required of the authorized signatory of the bank's loan documents.

Please call Stephen Chacon at 303.331.1031 if you need to discuss this transaction in further detail.  Thank you.

Very truly yours,

Stephen Chacon
Reverse Exchange Consultant

Enclosures

# TRIPLE NET LEASE

THIS LEASE is made on December 9, 2005, between Tong Investment, LLC, a Colorado limited liability company (the "Lessor") and Guy Gibson (the "Lessee").

In consideration of the payment of the rent and the performance of the covenants and agreements by the Lessee set forth below, the Lessor does hereby lease to the Lessee the following described property situate in the County of Boulder in the State of Colorado; the street address of which is 5318 Caribou Springs Trail, Longmont, Colorado

Legal Description
See Attached Exhibit "A"

TO HAVE AND TO HOLD the same with all the appurtenances unto the said Lessee from twelve o'clock noon on December 9, 2005, and until twelve o'clock noon on_____ , at and for a rental amount, payable in monthly installments of $_____, on or before twelve o'clock noon on the _____ day of each calendar month during the term of this lease at the office of the Lessor at **650 South Cherry Street, Suite 920, Denver, CO 80246**, without notice.

**Your lease payment includes the monthly management fee of $_____ which is not due until after 180 days has passed.  The remaining $_____ represents the debt service portion of the fee which is also not due for 180 days.  The first payment of $_____will be due on _____.**

The Lessee, in consideration of the leasing of the premises agrees as follows:

    1.  To pay the rent for the premises above described.

    2.  To pay to the Lessor those items listed below, or the Lessee's proportional share thereof, which for the purposes of this Lease is deemed to be **100**%, which amount shall be considered as additional rent, and shall be due on the presentation of the appropriate bill to the Lessee;

        (a) all taxes, assessments, and other governmental charges which are levied against and may create a statutory lien upon the leased premises which are levied or assessed during the term of this Lease;
        (b) all sufficient premiums for flue and extended coverage insurance, property damage, and liability insurance that Lessor may reasonably require; and
        (c) all costs and expenses of repairing and maintaining the building, all of its components, and all land surrounding the building.

    3.  To keep the improvements upon the premises, including sewer connections, plumbing, wiring and glass in good repair, all at Lessee's expense, and at the expiration of this lease to surrender the premises in as good a condition as when the Lessee entered the premises, loss by fire, inevitable accident, and ordinary wear excepted. To keep all sidewalks on and around the premises free and clear of ice and snow, and to keep the entire exterior premises free from all litter, dirt, debris and obstructions; to keep the premises in a clean and sanitary condition as required by the ordinances of the city and county in which the property is situate.

    4. To sublet no part of the premises, and not to assign the lease or any interest therein without the written consent of the Lessor.

    5. To use the premises only as approved by the Landlord and to use the premises for no purposes prohibited by the laws of the United States or the State of CO, or of the ordinances of the city or town in which said premises are located, and for no improper or questionable purposes whatsoever, and to neither permit nor suffer any disorderly conduct, noise or nuisance having a tendency to annoy or disturb any persons occupying adjacent premises.

    6.  To neither hold nor attempt to hold the Lessor liable for any injury or damage, either proximate or remote, occurring through or caused by the repairs, alterations, injury or accident

to the premises, or adjacent premises, or other parts of the above premises not herein demised, or by reason of the negligence or default of the owners or occupants thereof or any other person, nor to hold the Lessor liable for any injury or damage occasioned by defective electric wiring, or the breakage or stoppage of plumbing or sewerage upon said premises or upon adjacent premises, whether breakage or stoppage results from freezing or otherwise; to neither permit nor suffer said premises, or the walls or floors thereof, to be endangered by overloading, nor said premises to be used for any purpose which would render the insurance thereon void or the insurance risk more hazardous, nor make any alterations in or changes in, upon, or about said premises without first obtaining the written consent of the Lessor therefore, but to permit the Lessor to place a "For Rent" card or sign upon the leased premises at any time after sixty (60) days before the end of this lease.

7.   To allow the Lessor to enter upon the premises at any reasonable hour.

8.   To pay all charges for water and water rents, and for heating and lighting of the building in which said premises are located.

**IT IS EXPRESSLY UNDERSTOOD AND AGREED BETWEEN LESSOR AND LESSEE AS FOLLOWS:**

9.   No assent, express or implied, to any breach of any one or more of the agreements hereof shall be deemed or taken to be a waiver of any succeeding or other breach. Any payment by Lessee or acceptance by Lessor, of a lesser amount than due shall be treated only as a payment on account. Further, failure of the Lessor to timely bill for taxes, insurance or repairs, as required herein, shall not be deemed a waiver of the Lessee's liability to pay same.

10.   In the event Lessee fails to pay any amounts due to Lessor or other under this Lease, Lessee shall be allowed to cure said default if all payments due are made within 10 days of written demand for payment as per the notice provisions of this Lease.

11.   If, after the expiration of this lease, the Lessee shall remain in possession of the premises and continue to pay rent without a written agreement as to such possession, then such tenancy shall be regarded as a month-to-month tenancy, at a monthly rental, payable in advance, equivalent to the last month's rent paid under this lease, and subject to all the terms and conditions of this lease.

12.   If the premises are left vacant and any part of the rent reserved hereunder is not paid, then the Lessor may, without being obligated to do so, and without terminating this lease, retake possession of the said premises and rent the same for such rent, and upon such conditions as the Lessor may think best, making such change and repairs as may be required, giving credit for the amount of rent so received less all expenses of such changes and repairs, and the Lessees shall be liable for the balance of the rent herein reserved until the expiration of the term of this lease.

13.   The Lessor acknowledges receipt of a deposit in the amount of **$200.00** to be held by the Lessor for the faithful performance of all of the terms, conditions and covenants of this lease. The Lessor may apply the deposit to cure any default under the terms of this lease and shall account to the Lessee for the balance. The Lessee may not apply the deposit hereunder to the payment of the rent reserved hereunder or the performance of other obligations.

RICH-E-2397945

14.  If any part of the rent provided to be paid herein is not paid when due, or if any default is made in any of the agreements by the Lessee contained herein, it shall be lawful for the Lessor to declare the term ended, and to enter into the premises, either with or without legal process, and to remove the Lessee or any other person occupying the premises, using such force as may be necessary, without being liable to prosecution, or in damages therefore, and to repossess the premises free and clear of any rights of the Lessee. If, at any time, this lease is terminated under this paragraph, the Lessee agrees to peacefully surrender the premises to the Lessor immediately upon termination, and if the Lessee remains in possession of the premises, the Lessee shall be deemed guilty of forcible entry and detainer of the premises, and, waiving notice, shall be subject to forcible eviction with or without process of law.

15.  In the event of any dispute arising under the terms of this lease, or in the event of non-payment of any sums arising under this lease and in the event the matter is turned over to an attorney, the party prevailing in such dispute shall be entitled, in addition to other damages or costs, to receive reasonable attorney's fees from the other party.

16.  In the event any payment required hereunder is not made within ten (10) days after the payment is due, a late charge in the amount of five percent (5%) of the payment will be paid by the Lessee.

17.  In the event of a condemnation or other taking by any governmental agency, all proceeds shall be paid to the Lessor hereunder, the Lessee waiving all right to any such payments.

18.  This lease is made with the express understanding and agreement that, in the event the Lessee becomes insolvent, or is declared a bankrupt, then, in either event, the Lessor may declare this lease ended, and all rights of the Lessee hereunder shall terminate and cease.

**THIS LEASE** shall be binding on the parties, their personal representatives, successors and assigns.

**ADDITIONAL PROVISIONS**

LESSOR:
TONG Investment, LLC
BY:  Shamrock Holdings Group, LLC,
Member

LESSEE:

By: _____
Chad J. Greenberg, Assistant Manager

_____
Guy Gibson

RICH-E-2397946

_____
Date

_____
Date

# PROMISSORY NOTE

$                                                                    **December 9, 2005**

I (or if more than one maker) we, jointly and severally, promise to pay to the order of

### *Guy Gibson at* _____

\*\*\* and _____/100\*\*\* Dollars

with interest thereon at the rate of **6** percent per annum from the above date until paid: this promissory note shall be due upon the sale of the real property securing this promissory note, or six months from closing, whichever shall occur first.  Interest is to be paid monthly, after a period of six months.  If this note is placed in the hands of an attorney for collection, I/we promise to pay the reasonable attorney's fees and collection costs of the holder hereof; and if a suit or an action if filed hereon, also promise to pay (1) holder's reasonable attorney's fees to be fixed by the trial court and (2) if any appeal is taken from any decision of the trial court, such further sum as may be fixed by the appellate court, as the holder's reasonable attorney's fees in the appellate court.

The occurrence of any of the following shall constitute an Event of Default under this Note:  (a) Failure by Maker to make any payment of principal or interest under this Note when and as the same becomes due and payable and the continuation of such

RICH-E-2397947

failure for a period of fifteen (15) days thereafter; or (b) Maker shall: (i) be generally unable or admit in writing the inability to pay Maker's debts as they become due; (ii) have an order for relief entered in any case commenced by Maker under the federal bankruptcy laws, as now or hereafter in effect; (iii) commence a proceeding under any federal or state bankruptcy, insolvency, reorganization or similar law, or have such a proceeding commenced against Maker and either have an order of insolvency or reorganization entered against Maker or the proceeding remain undismissed and unstayed for ninety (90) days; (iv) make an assignment for the benefit of creditors; or (v) have a receiver, trustee or custodian appointed for Maker for the whole or any substantial part of Maker's properties.

Upon the occurrence of an Event of Default, to the extent permitted by applicable law, interest shall accrue on principal and interest under this Note at a rate per annum equal to thirteen percent (13%), or the maximum amount permitted by law, if lower, until said principal and interest is paid in full to Payee.

Maker agrees (i) that the failure of Payee to exercise any rights or remedies granted hereunder shall not constitute a waiver of such rights or remedies or any other rights or remedies, or preclude the exercise or such rights or remedies or any other rights or remedies at any time, and (ii) that failure of Payee to exercise any rights or remedies granted hereunder in the event of a breach hereof or an Event of Default hereunder, shall not be deemed a waiver of such breach or Event of Default or of any other or further breaches or Events of Default.  In addition, Maker hereby waives demand, presentment for payment, notice of dishonor, protest and notice of protest, and diligence in collection and bringing suit and agrees that Payee may extend the time for payment, accept partial payment, or take, exchange, or release security without discharging or releasing Maker.

This Note shall be construed and enforced in accordance with the laws of the State of Colorado, without giving effect to principles of conflicts of law.

The invalidity or unenforceability of any term or provision of this Note, or the application of such term or provision to any person or circumstance, shall not impair or affect the remainder of this Note and its application to other persons and circumstances

RICH-E-2397948

and the remaining terms and provisions hereof shall not be invalid, but shall remain in full force and effect.

Any notice to Maker required or permitted hereunder shall be deemed to have been effectively delivered if in writing and served by personal delivery to Maker or sent by registered or certified mail with return receipt requested, to Maker at his place of residence as set forth in the records of Payee.

Assignment by Maker (by operation of law or otherwise) and the assumption by any third party of Maker's obligations hereunder shall be made only with the written consent of Payee.

Borrower shall not be personally liable on this Note, and the Note Holder agrees to look solely to the property securing this Note for payment in the event of default hereunder, hereby waiving any and all rights to a personal judgment against Borrower on this Note.

This note is secured by a Deed of Trust recorded on that real property described as See Attached Exhibit "A".

The address of Maker for all purposes under this Promissory Note shall be Tong Investment, LLC, 650 South Cherry Street, Suite 920, Denver, Colorado  80246.

Tong Investment, **LLC**
By: Shamrock Holdings Group, LLC
Member


_____
Chad J. Greenberg, CPA/PFS,CES
Assistant Manager

RICH-E-2397949



**Investment Exchange Group, LLC**

Corporate Office: 650 South Cherry Street, Suite 920 Denver, CO 80246
Tel 303.331.1031 • Fax 303.331.8448    www.ixg1031.com
Nationwide Toll Free: 800.908.1031

December 9, 2005

Guy Gibson

_____
_____

Re:    Reverse Exchange for 5318 Caribou Springs Trail, Longmont, Colorado

Dear Guy:

Thank you for using Investment Exchange Group to facilitate your Reverse 1031 Exchange. Pursuant to the above captioned transaction, attached you will find the following documents for your review:

1.    Real Estate Acquisition and Qualified Exchange Accommodation Agreement (QEAA) – this is the agreement between you, as the Exchanger, and the Exchange Accommodation Titleholder, Tong Investment, LLC (EAT). Most importantly this agreement contains your exclusive option to purchase the property back from our LLC upon the completion of your 1031 exchange.

2.    Assignment of Contract to Buy & Sell Real Estate for Replacement Property – this assigns your interest in the QEAA over to IXG as your Qualified Intermediary. It also assigned your option as outlined in the QEAA to Investment Exchange Group, LLC as Qualified Intermediary to avoid potential constructive receipt issues.

3.    Notification for Non-Safe Harbor Reverse Exchange – This document outlines your continued obligation to maintain adequate insurance on the property we are holding for you in Tong Investment, LLC. Please pay close attention to the insurance requirements noted.

4.    Promissory Note Made by the EAT (draft) – The earnest money or deposits that you have provided, and any additional amounts you pay at closing, represent funds you have loaned to the EAT. The EAT gives you a Promissory Note for the sum of these

RICH-E-2397950

amounts.  We will calculate the total amount of the Promissory Note after we see the final settlement statement.

5.    Triple Net Lease (draft) – this is the lease that the EAT will make with you so that you have the right to access the property and responsibility to insure the property.  Please note that the lease payment is blank at this time.  Once we know the full amount that you and your lender will be lending the EAT to purchase the property, we will fill in the blank.  Your lease payment will be based on the sum of the monthly payment for the amount you loan to the EAT (Promissory Note), payment to the lender, if the EAT is shown as borrower, and a $150 monthly rent payment (not due for six months).  The monthly amounts for the Promissory Note and lender payment will be returned to you each month after your check clears the EAT's bank account.  After closing we will be sure that you receive a copy of the completed lease

6.    Deed of Trust or appropriate security instrument (draft) – This document, providing you with security for the loan you are advancing to the EAT, will be completed at closing.  It may or may not be recorded, depending upon state in which closing occurs.

Please review these documents and feel free to have your tax advisor or legal counsel review them as well.  The originals will be sent to the closing for you to sign.

As you will note in the QEAA, Triple Net Lease, and our Notification for Reverse Exchanges, we will need evidence of insurance effective on the day of closing.  Be sure you have your insurance agent fax your proof of insurance to us before the closing occurs.  All insurance requirements are defined in the Notification and Lease.

The charges for this transaction include:
Option Fee **$4,000.00**
Security Deposit $200 – for expenses such as bank fees and overnight delivery expenses (balance is refundable)
Monthly Lease Payment (rent payment) $150 over debt service
Exchange Fee $500 for the first relinquished property ($500 for each relinquishment thereafter  and $250 for additional purchases after the first replacement property purchase)
Option Extension Fee $500 for each additional 6 month period past the term of the Real Estate Acquisition and Qualified Exchange Accommodation Agreement
Wire Fees of $20 for each incoming and outgoing wire

Please do not hesitate to give me a call if you have any questions regarding your reverse exchange.  I look forward to working with you on this transaction.

Very truly yours,

Stephen C. Chacon
Reverse Exchange Consultant

Enclosures

# Exhibit 8

## FEDERATION OF EXCHANGE ACCOMMODATORS

### AFFILIATE
### MEMBERSHIP APPLICATION
### 2004

1. Company Name: _Matrix Capital Bank_    #11049

2. Affiliated Company (if any): _____

3. Address: _700 17th Street_

4. City/State/Zip: _Denver    Co    80202_

5. Telephone: _(720) 956-6573_    Fax: _(720) 932-7806_

6. E-Mail: _JThornton@Matrixbancorp.com_ Web Site: _www.Matrixbank.com_

7. Member Representative: _Judy Thornton_    #11050

8. Member Participants: _Patrick Howard_    #11051
   (limit 2)

9. a. ___✓___ Corporation

   b. _____ Partnership: General _____ or Limited _____

   Partners: _____

   _____

   c. _____ Sole Proprietorship:

10. Please indicate the following for the prospective Member (Check only **one** that pertains to your company):

    | | | | | | |
    |---|---|---|---|---|---|
    | a. | _____ | Attorney | f. | _____ | Realtor |
    | b. | _____ | Accountant | g. | _____ | Related Trade Association |
    | c. | ___✓___ | Bank other Financial Institution | h. | _____ | Insurance or Bonding Companies |
    | d. | _____ | Title or Escrow Company | i. | _____ | Property Managers |
    | e. | _____ | Investment or Securities Firm | j. | _____ | Tenant-in-Common |

11. Branch Location(s) please include any locations on the following pages.

12. <u>Amount Due:</u>
    Affiliate Membership:    $ _700_    Chk #55599 @760
    Branch(es) each # _1_ x $200:    $ _____
    Web Page Link:    $ _____
    GRAND TOTAL:    $ _700_

13.    **ELIGIBILITY REQUIREMENTS:**

Has any officer, director, shareholder or principal of Member Company ever pled "guilty" or "no contest" (nolo contendere) or been convicted of any crime (e.g. a misdemeanor or felony) involving fraud, embezzlement, misappropriation of funds, conversion of property, theft, forgery or any crime involving the property of another?

No    ✓

If Yes, explain: _____

_____

_____

Has any officer, director, shareholder or principal of Member Company ever had any professional designation or license suspended or revoked or ever voluntarily relinquished a professional designation due to activities concerning fraud, embezzlement, misappropriation of funds, conversion of property, theft, forgery or a crime involving the property of another?

No    ✓

Yes _____ If yes, please provide a complete explanation including, but not limited to, dates and jurisdiction:

_____

_____

*Note: A "Yes" answer to either of the above questions will not automatically result in disqualification from membership in the FEA but will be reviewed by the FEA Membership Committee based on all relevant facts and circumstances.*

**Those applicants denied membership in the FEA will be notified in writing of the Membership Committee's decision and may file an appeal with the Board of Directors.**

I, as the undersigned authorized signatory for the Member Company, recognize and agree to the following (**initial all of the following**):

_____    To the best of my knowledge, the information contained in this application is true, complete and correct, and is made in good faith. I understand that the FEA reserves the right to verify any or all information on this application and that any incorrect or misleading information may constitute grounds for rejection or revocation of Company Membership in the FEA.

_____    On behalf of the Member Company, I hereby consent to the release of information to the FEA by any licensing or certification body that may be contacted by the FEA to verify any information contained in the Application. The Member Company agrees to hold harmless FEA for liability from verification/inspection of documents or records/investigations, from action taken during the application process, and from rejection for membership in the FEA.

_____    All officers, directors, shareholders and principals of Member Company have read the FEA Code of Ethics (copy enclosed), and do hereby agree to abide by the FEA Code of Ethics and to further require all employees and independent contractors of Member Company to do same.

_____    The Member Company recognizes that the FEA reserves the right to change its standards or policies at any time.

_____    The Member Company agrees to inform FEA of changes or circumstances that may materially alter this application.

In Witness whereof, on behalf of the Member Company, the undersigned sets his/her hand and seal:

Member Company Name: _Matrix Capital Bank_ _____

By: _____    Date  _11-30-04_ _____

Name: _____

Its: _____

RICH-E-1550826

## BRANCH LOCATION(S)

Branch locations will receive copies of all Newsletters, General Membership and Regional Meeting Notices, and Special Membership and Legislative mailings, as well as listed on the FEA QI Locator. Each location is **$200.00**.

Company Name: *Matrix Capital Bank*
Contact: *Judy Thornton*
Address: *700 17th Street*
City: *Denver*
State: *Co*          Zip: *80202*
Telephone: *(720) 956-6573*   Fax: *(720) 932-9806*
E-Mail: *JThornton@Matrixbancorp.com*   Web Site: *Matrixbank.com*

Company Name: *Matrix Capital Bank*
Contact: *Patrick Howard*
Address: *700 17th Street*
City: *Denver*
State: *Co*          Zip: *80202*
Telephone: *(720) 956-6504*   Fax: (   )
E-Mail: *PHoward@MatrixbancorSp.com*   Web Site: *MatrixBank.com*

Company Name: _____
Contact: _____
Address: _____
City: _____
State: _____   Zip: _____
Telephone: (   ) _____   Fax: (   ) _____
E-Mail: _____   Web Site: _____

Company Name: _____
Contact: _____
Address: _____
City: _____
State: _____   Zip: _____
Telephone: (   ) _____   Fax: (   ) _____
E-Mail: _____   Web Site: _____

Company Name: _____
Contact: _____
Address: _____
City: _____
State: _____   Zip: _____
Telephone: (   ) _____   Fax: (   ) _____
E-Mail: _____   Web Site: _____

### (ATTACH ADDITIONAL PAGES IF REQUIRED)

Vendor No: **FEA100**        **January 4, 2005**

Vendor Name: **FEDERATION OF EXCHANGE ACCOMMODATIO**   Check No: **55599**

| Reference | Invoice Date | Gross Amount | Discount Taken | Net Amount Paid |
|-----------|--------------|--------------|----------------|-----------------|
| MEMBERSHIP | 01/03/05 | 700.00 | | 700.00 |
| | | | | |
| **Totals :** | | **700.00** | | **700.00** |

CHECK IS VOID IF ANY OF THE FOLLOWING SECURITY FEATURES ARE ABSENT. ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER

23-8953/1020

Check No: **55599**

**Matrix Capital Bank**
700 17th Street, P.O. Box 1320
Denver, CO 80202

Check Date: **January 4, 2005**

Amount: ***700.00***

Pay        **** SEVEN HUNDRED AND 0/100  ****

To The        FEDERATION OF EXCHANGE ACCOMMODATI
Order Of:    100 N 20TH STR 4TH FLR
            PHILADELPHIA, PA  19103-1443

Your Signature Here

RUB RED IMAGE - DISAPPEARS WITH HEAT.        SECURITY FEATURES INCLUDED, DETAILS ON BACK.        SEE BACK FOR ARTIFICIAL WATERMARK

⑃"005 5599"⑃

RICH-E-1550828

2004





# FEDERATION OF EXCHANGE ACCOMMODATORS

# CODE OF ETHICS

The relationship between the Exchange Accommodator and the Exchanger requires a high level of confidence in that the client entrusts and deposits with the Accommodator title to real estate and proceeds from the sale of real estate in furthering an I.R.C. §1031 exchange. Therefore, it is the duty of the Exchange Accommodator to uphold and improve the standards of its profession and to share the responsibility for its integrity and honor.

Each member of the Federation of Exchange Accommodators pledges to observe the letter and spirit of this Code of Ethics and to conduct its business in accordance with it.

## ARTICLE I

An Exchange Accommodator shall keep informed of laws, regulations, and legislation which affects I.R.C. §1031 exchanges and the Accommodator profession.

## ARTICLE II

Protection of the public against fraud, misrepresentation, and other illegal practices in the Exchange Accommodator profession shall be the responsibility of each Accommodator. An Exchange Accommodator shall not voluntarily participate in any act which it knows to be unlawful or against the standard of conduct set forth in this Code, even if directed to do so by the Exchanger or his agent or advisor. It shall be the duty of every Exchange Accommodator to protect the reputation of the profession by exposing those engaged in such practices.

## ARTICLE III

is the duty of an Exchange Accommodator to act in such a manner as to preserve the trust and confidence of its clients. Without the written consent of the Exchanger, an Exchange Accommodator shall not reveal the contents of any file to any party not entitled except in case of a subpoena being presented.

## ARTICLE IV

An Exchange Accommodator who is not licensed to practice law or accountancy shall not engage in activities which constitute such practice. The Exchange Accommodator shall recommend in all cases that the parties involved in an exchange transaction seek legal counsel and accounting advice.

## ARTICLE V

An Exchange Accommodator shall not accept any remuneration paid directly or indirectly by the client without the client's knowledge and consent.  If recommending other products or services, they shall disclose to the client any financial benefits or fees the Exchange Accommodator may receive as a result of such recommendation.  They shall not recommend or suggest to a client the use of services of another organization or business entity in which they have a direct interest without disclosure of such interest at the time of recommendation or suggestion.  At no time shall an Exchange Accommodator accept any illegal payment of any kind.

It is the duty of an Exchange Accommodator to disclose to its clients those circumstances, relationships, and interests, if any, which might adversely influence the client in the selection of an Exchange Accommodator. This disclosure shall be made when the influencing factor becomes known to the Exchange Accommodator.

## ARTICLE VI

An Exchange Accommodator shall act in the best interest of its clients by providing and following written exchange agreements and assignment documents, by provided (when asked) copies of all documents received from escrow to its clients and their representatives, and by acting in a timely manner in order to expedite the transfer and minimize the time taken by the exchange.

## ARTICLE VII

An Exchange Accommodator shall act in the best interest of its clients. This shall include (but not be limited to) the duty to: keep the exchange proceeds in a stable financial institution or other reliable investment program unless the client requests a specific investment; provide financial information to the client and his representatives during the Exchange Period as requested; and give a full accounting of funds to which the client is entitled at the end of the exchange.

## ARTICLE VIII

ₗExchange Accommodator shall cooperate fully with other Accommodators in all matters affecting the industry as a whole. This includes, but is not limited to, the sharing of knowledge and experience through active participation in FEA educational programs, reporting violations of the Code of Ethics to the President of the FEA in writing, and active participation in the FEA.

## ARTICLE IX

Except in the case of disclosure of conduct in violation of the Code of Ethics, or in the case of potential civil litigation the Exchange Accommodator shall never denigrate nor disparage the professional practices of a competitor nor volunteer an opinion of a competitor's transactions or business practices.

## ARTICLE X

An Exchange Accommodator shall maintain, uphold and conform to this Code of Ethics and the rules, regulations, and By-Laws of the Federation, shall at all times positively reflect the professional standards of practice set forth herein, and shall take an active part in the work of the Federation.

## ENFORCEMENT

The penalty for failure to meet the standards of this Code of Ethics shall be private reprimand by, public reprimand by, suspension of membership in, or expulsion from the Federation of Exchange Accommodators. The procedure for implementation of the penalty phase shall be:

A.  The Complainant shall submit to the President of FEA a written complaint specifically describing in as much detail as possible the violation.

B.  The President shall appoint a three person board of review to consider the violation and recommend the action to be taken. At its option, the board of review may solicit testimony in oral or written form.

C.  The recommended action will be submitted to the Accused with copies to the Complainant and the President.

D.  If no action is taken by the Accused, the recommended action shall stand.  The Accused shall have forty-five days from mailing of the notice to his last known address to request a public hearing from the President which shall be scheduled within forty-five days of the receipt of the request by agreement of the parties. Written and oral testimony may be received and argument made and a written decision submitted to the Accused within fifteen days of the hearing.

E.  The decision may be appealed to the next annual meeting.

F.     If the Accused continues to claim an association with the FEA after suspension or expulsion, the
       FEA Board of Directors may, at its option, release to the public the information causing the
       suspension or expulsion.

# Exhibit 9

# The Exchange by FEA

Volume 1, Issue 2, November 15, 2005

**The Federation of Exchange Accommodators**

100 North 20th Street
4th Floor
Philadelphia, PA 19103-1443
Phone: (215) 564-3484
Fax: (215) 564-2175
Email: fea@fernley.com

This issue sponsored by
*SCI Real Estate Investments*
**www.sciproperties.com**

Thank you to our sponsor for November,
*SCI Real Estate Investments*


SCI
Own Big. Own Better.

THE PRESIDENT'S CORNER

RECORD BREAKING CROWDS PACK THE ANNUAL CONFERENCE

2006 MEETING DATES- MARK YOUR CALENDARS!

NEW FEA BOARD AND OFFICERS ELECTED

FEA WELCOMES NEW MEMBERS

FEA TO PUBLISH MEMBERSHIP DIRECTORY IN 2006

CONGRATULATIONS TO THE NEW CES® DESIGNEES!

COURTING DISASTER

PARTNERSHIP ISSUES- ANNUAL CONFERENCE FOLLOW UP

DEAR FEA

MEMBERS IN THE NEWS

HERE'S HOW YOU CAN SUBMIT NEWS TO THE EXCHANGE

**Downloadable Forms**
member news form
sponsor form

## THE PRESIDENT'S CORNER

*Dennis Helmick, CES® President, Exchange Facilitators Corporation, Seattle, Washington*

At our Annual Meeting in Las Vegas, I stressed five goals that our Board of Directors wants to accomplish this year:

- Focus on the state legislative effort to include a model regulatory act; creation of a database for each state listing key legislators, regulators, industry allies; and a legislative calendar. Our hope is to have an FEA member team in place for each state to respond as needed.
- Create an FEA Marketing Program to brand our Association. We want to make the FEA synonymous with Protection and Service with both Referral Sources and the General Public.
- Focus on our Code of Ethics to refine our code, clarify our ethics administrative process, and thoroughly educate our members in our Code of Ethics.
- Build and enhance our Member Services Program to deliver a great variety of Affinity Program cost savings for our members.
- Increase and enhance our Educational Services to our Members. Two specific goals are developing a study guide for the CES® Test and a "Best Practices" Manual.

Each of these goal areas have a committee tasked to work on them. Our Association needs your help. Please volunteer! Thanks in advance for your help.

## RECORD BREAKING CROWDS PACK THE ANNUAL CONFERENCE

[back to top]

Throughout this past year, FEA membership has grown significantly and many of these new members came out to support FEA at the Annual Conference. Total attendance at the Conference topped out at 515 - a new record for an FEA event! The Conference offered a wide variety of educational opportunities. As one member described the meeting, *"Of all the professional conventions I attend this is one of the better for informational content."*

Friday night's outdoor pool party proved to be a hit! Jim Shaw of CapHarbor provided excellent entertainment with his band, Red Rhythm. Members also enjoyed the unique performers, especially the caricaturists! One member commented: *"I feel that the networking Friday Night Reception was the best event FEA has put together yet. In the outdoor atmosphere, networking was easy, comfortable, and we were able to hit a broad span of people. This was the hit of the conference - networking capabilities were the best. Great job!! By the way, the food and entertainment was awesome too."*

We would like to thank everyone that contributed to making the Annual Conference a large success. We appreciate the feedback from everyone who attended the event and took the time to fill out the survey. We will consider all your suggestions and we will work to make next year's Conference even more successful!

RICH-E-0334402

And, let's give one more, big thank you to our 2005 Annual Conference Sponsors:

**PLATINUM:** For 1031, Noble Royalties Inc., Citibank and TICA

**GOLD:** SCI Real Estate Investments, Deutsche Bank, The Pierini Company, Triple Net Properties, LLC, 1031 Exchange Consultants, Matrix Capital Bank

**SILVER:** CapHarbor, TIC Real Estate Association, Inc., 1031 Property Watch, Inc., J.P. Morgan Escrow Services, CORE Realty Holdings, LLC, Countrywide Bank, N.A., OMNI Brokerage, Inc., The Geneva Organization, Lockton Insurance Brokers, Inc., Republic First Bank, Commerce Bank

**EXHIBITORS:** Upland Real Estate Group, Inc., Argus Realty Investors, LP, Barnett Shale Holdings, Inc., Merrill Lynch

Also, thanks to Core Realty Holdings LLC for providing the very handy tote bags!



### *2006 MEETING DATES- MARK YOUR CALENDARS!*

[back to top]

#### Regional Meeting Schedule

| Saturday, January 21 | Southern California | Hilton San Diego Airport/Harbor Island |
| Friday, February 3 | Pacific Northwest | Hilton Garden Inn Portland Airport |
| Saturday, March 11 | Rocky Mountains | Embassy Suites Denver Intl. Airport |
| Saturday, April 1 | Northern California | Hilton Garden Inn, San Francisco |
| Friday, June 9 | Midwest | Hilton Garden Inn, Chicago Downtown Magnificent Mile |

#### 2006 Mid-Year Conference

| May 11-12, 2006 | Mid-Year Conference | Philadelphia Marriott |

More details regarding registration, sponsorship, and program for the events will soon be available on the FEA website, under the "Calendar of Events" page.

### *NEW FEA BOARD AND OFFICERS ELECTED*

[back to top]

The FEA would like to recognize the new FEA Officers of the Board of Directors for 2006. They are the following:

**Officers:**

| President: | Dennis Helmick, Exchange Facilitator Corporation |
| President Elect: | Hugh Pollard, First American Exchange Company |
| First Vice President: | Mary Foster, 1031 Services, Inc. |
| Treasurer: | Brad Penner, B P & A Holdings, Inc. |
| Secretary: | Ralph Bunje, Independent Exchange Services |

**Board Members:**

RICH-E-0334403

| | |
|---|---|
| Radah Butler | Investment Property Exchange Services, Inc. |
| J. Patrick Dowdall | Dowdall and Associates, P.C. |
| Kate D. Gallivan | J.P. Morgan Property Exchange, Inc. |
| Max A. Hansen | American Equity Exchange, Inc. |
| David Kuns | Starker Services, Inc. |
| Daniel E. McCabe | Investment Exchange Group, LLC |
| Margo McDonnell | 1031 Corp., Inc. |
| Andrew G. Potter | Law Offices of Andrew G. Potter |
| Ronald L. Raitz | Real Estate Exchange Services Inc. |
| Teresa Story-Turner | Southwest Exchange Corporation |

## FEA WELCOMES NEW MEMBERS

[back to top]

FEA would like to extend a warm welcome to the following Members who joined in October!

**Regular Members:**

| | |
|---|---|
| Security Title Guaranty Co. | Littleton, CO |
| Bennett Main & Gubbrud, P.C. | Belle Fourche, SD |
| Alliance Property Management, LLC | Amarillo, TX |
| Professional Exchange, Inc | Newport Beach, CA |
| Bouvier & Associates, CPA's | Melbourne, FL |
| SQI Exchange Services, LLC | Winter Park, FL |

### FEA TO PUBLISH MEMBERSHIP DIRECTORY IN 2006
[back to top]

During the first quarter of 2006, FEA will publish a membership directory listing all Regular and Affiliate Members, plus full contact information. This publication will offer an easy reference for all members to the more than 300 companies who comprise FEA. Look for details shortly.

### CONGRATULATIONS TO THE NEW CES® DESIGNEES!
[back to top]

We would like to congratulate the following individuals who passed the CES® exam this past October. There are now 206 individuals that have obtained their designation! The exam will be offered next at the Mid-Year Conference in Philadelphia, PA on Saturday, May 13, 2006. For more information on the CES® program check out their website at **www.1031ces.com**.

| | |
|---|---|
| Helen W. Allen, CES® | First American Exchange Company |
| W. Spencer Anderson, CES® | Starker Services Inc. |
| Philip David, CES® | Benash Real Property Exchange |
| Carmine DiFulvio, CES® | Old Republic Exchange Company |
| Mandi L. Henning, CES® | 1031 Corporation Exchange Professionals |
| Chadley Isett, CES® | 1031 Corp. Inc. |
| Carla Janousek, CES® | Texas Escrow Company, Inc. |
| Timothy Larkin, CES® | Summit Accommodators, Inc. |

RICH-E-0334404

| | |
|---|---|
| Christine Latulip, CES® | Edmund & Wheeler, Inc. |
| Patrick McCaffrey, CES® | Investment Property Exchange Services |
| Anthony McDonald, CES® | Starker Services Inc. |
| Brian McNulty, CES® | J.P. Morgan Property Exchange, Inc. |
| Christine Moore, CES® | Realty Exchange Corporation |
| Colleen Moss, CES® | Equity Advantage, Inc. |
| Nichole Nunes, CES® | First American Exchange Company |
| Vicki Orlando, CES® | Investment Property Exchange Services |
| Wendy Oshiro, CES® | Timcor Exchange Corporation |
| Diane Rivera, CES® | Starker Services Inc. |
| Dana Rocker-Sobrado, CES® | Investment Property Exchange Services |
| Gregory Smith, CES® | Investment Property Exchange Services |
| Robert Stephens, CES® | Delmarva 1031 Exchange Service, LLC |
| Eric VanDonge, CES® | First American Exchange Company |
| Paul White, CES® | First National Qualified Intermediary Inc. |
| Monique A. Wilson, CES® | Exchange Resources Inc. |

## COURTING DISASTER
[back to top]

*Phil Jelsma, Luce Forward Hamilton Scripps LLP*
Recently, I was carefully looking at a picture in the newspaper of a demolished block in New Orleans looking for a street address. A colleague asked why I was so interested in whether the property in the picture was for sale. I told him I had a number of clients involved in Section 1031 exchanges and that street addresses of property for sale in a federal disaster area might be important.

Why? The Katrina Emergency Tax Relief Act of 2005 (HR 3768) provided extended due dates for taxpayers in the Katrina disaster area to file returns, pay taxes and perform certain time sensitive acts until February 28, 2006. Time sensitive acts include the 45-day identification period for delayed exchanges and the 180-day deadline for acquiring property in forward or reverse exchanges.

Revenue Procedure 2005-27 provides a list of time sensitive acts for taxpayer affected by a Presidentially declared disaster, or terrorism or military actions. Section 17 of Rev. Proc. 2005-27 provides that the taxpayer may use the postponement rules in Section 17 in lieu of the general extension dates provided by an IRS News Release or other guidance with respect to Presidentially declared disaster areas.

Section 17 of Rev. Proc. 2005-27 provides that the last day of the 45-day extension period or last day of the 180-day replacement period that falls on or after the date of a Presidentially declared disaster is postponed by 120 days or to the last day of the general disaster extension period authorized by an IRS News Release, whichever is later. A taxpayer is entitled to postponement if (1) the relinquished property was transferred on or before the date of a Presidentially declared disaster and (2) the taxpayer is an "affected" taxpayer (lives, or has a business in the covered disaster area) or who has difficulty meeting the 45-day identification or 180-day replacement period due to the Presidentially declared disaster for the following or similar reasons:

1. The relinquished property or replacement property is located in a covered disaster area
2. The principal place of business of any party in the transaction (such as a qualified intermediary, exchange accommodation title holder, transferee, settlement attorney, lender, financial institution or title insurance company) that is located in the covered disaster area
3. Any party to the transaction (or employee to the party) is killed, injured or missing as a result of Presidentially declared disaster
4. The document prepared in connection with the exchange or relevant land record is

RICH-E-0334405

destroyed, damaged or lost as a result of the Presidentially declared disaster

5. A lender decides not to fund, either permanently or temporarily, due to a Presidentially declared disaster, or refused to fund a loan because the taxpayer's flood, disaster or other hazardous insurance is not available due to the Presidentially declared disaster

6. A title insurance company has not been able to provide or required a title insurance policy to settle or close a real estate transaction due to the Presidentially declared disaster.

As a result of the Katrina Emergency Tax Relief Act and Rev. Proc. 2005-27, it is possible to get a 120-day or until February 28, 2006 extension for the 45-day identification and 180-day replacement period by identifying replacement property located in the Presidentially declared disaster area. Although it is unlikely that Congress intended that natural disasters be used for delaying a time period under Code Section 1031, there seems to be no requirement that the identification be bona fide or made with the intention to acquire identified property.

### PARTNERSHIP ISSUES- ANNUAL CONFERENCE FOLLOW UP
[back to top]

*Richard M. Lipton, Esq., Baker & McKenzie*

*During the Annual Conference, Dick Lipton offered a great program on Partnership Issues. However, there was some confusion caused by some of his comments concerning the involvement of QIs in the sale of TIC interests. Dick has graciously prepared a detailed explanation to clarify any questions. To help you further in this regard, here is a link to Omni Brokerage's site explaining Key Definitions: http://1031ticguide.com/definitions.html*

There seems to be some misunderstanding or confusion caused by my comments at the FEA Annual Meeting concerning the involvement of qualified intermediaries (QIs) in the sale of tenant-in-common interests (TIC interests), most of which constitute securities for securities law purposes.

What I stated at the meeting was that QIs need to recognize that most TIC interests are securities. As a result, if the QI is not a licensed securities broker/dealer (and most are not), they cannot be compensated for referring a client to the securities broker/dealer involved in the sale. The QI can still be compensated for its services as a QI, and it can still perform its traditional functions in connection with such a transaction, but a securities broker/dealer cannot compensate the QI for a referral due to limitations in the securities laws. But, clearly, a QI can refer its customers to a securities broker/dealer who is selling TIC interests.

There are some sponsors of TIC interests that do not treat these interests as securities for securities law purposes. And some of these sponsors may compensate QIs for referrals. If the TIC interest is not a security under the securities laws (and some have been carefully designed to avoid securities law treatment), then the receipt of compensation in such circumstances will not put the QI at risk. On the other hand, I have reviewed the documents for a number of the offerings that are not treated as securities, and it is my view that many of them would be considered to be securities by the applicable federal and state authorities. If the TIC interest is later determined to be a security, and if the QI was compensated by the sponsor in such transaction, than the QI has received compensation in connection with the sale of a security, and that could put the QI at risk. Therefore, QIs should exercise caution in dealing with TIC interests that are not treated as securities. As long as the QI does not receive compensation (other than for its traditional QI services), the QI will not have any problems. But if the QI receives a referral fee and if the TIC interest is later determined to be a security, then the QI could also face liability if either the appropriate authorities (or the purchaser) decides to bring legal actions resulting from the improper sale of a security.

### DEAR FEA
[back to top]

### HERE IS ONE OF FEA'S FREQUENTLY ASKED QUESTIONS...

Question:



RICH-E-0334406

*What type of computer software do you recommend for exchanges?*

**Answer:**
Presently, I work for one of the large, national QIs. As I expect the answer to be with the others similarly situated, we use proprietary software. However, I was previously employed by a smaller regional QI and was assigned the task of locating software to manage our exchanges. What I found is that there is a true dearth of software out there for this task. (We can't go to the local office superstore and buy an off-the-shelf package like Quicken, which does everything we need.) I found only a couple of such packages, and neither one was as complete as I wanted. They all seemed to lack something -the ability to adapt to my growing business; the "horsepower" to process complicated exchanges. If I were building my own QI business from the ground up, I would speak to my computer vendors. I would probably start with a database program such as Access and have it customized to fit my needs. That being said, I know that several of the QIs, who are also title agents, have employed software experts to "get behind the code" and adapt/improve their title production software. *(Dave Gorenberg, LandAmerica Exchange Company)*

## *MEMBERS IN THE NEWS*
[back to top]

### Granite Exchange Services, LLC Relocates to Roseville, CA
Granite Exchange Services, LLC (GES) opened the doors to its new national headquarters in Roseville, CA. GES will occupy the newly developed Rocky Ridge Corporate Center at the corner of Rocky Ridge Dr. and E. Roseville Parkway. Other tenants include Alliance Title and Colliers International.

Granite Exchange Services, LLC (GES), established in 1996, is a national "Qualified Intermediary" providing 1031 tax deferred real estate exchange services to investors, closers, realtors, CPAs, and Attorneys.

For more information, contact Michelle White or Justin Swift at 916-367-6620 or email
michelle@ges1031.com.

### *HERE'S HOW YOU CAN SUBMIT NEWS TO THE EXCHANGE*
[back to top]

Do you have any exciting news about your company and/or employees or do you have suggestions for topics to be covered? Please use this form to provide FEA with that information and we would be happy to include that information in a future issue of *The Exchange.*

Interested is sponsoring an issue of *The Exchange*? Simply fill out this form and submit it to FEA headquarters.

RICH-E-0334407

# The Exchange by FEA

Volume 2, Issue 1, February 9, 2006

**The Federation of Exchange Accommodators**

100 North 20th Street
4th Floor
Philadelphia, PA 19103-1443
Phone: (215) 564-3484
Fax: (215) 564-2175
Email: fea@fernley.com

THE PRESIDENT'S CORNER

INCREASE YOUR PROFESSIONAL KNOWLEDGE!

SUBMIT 2006 ANNUAL DUES PAYMENT IMMEDIATELY!

FEA TO PUBLISH MEMBERSHIP DIRECTORY

APPLY NOW TO TAKE THE CES® EXAM!

Saturday, May 13, 2006 (Following the FEA Mid-Year Conference):

SPONSORSHIPS STILL AVAILABLE FOR REGIONAL MEETINGS!

2006 MEETING DATES - MARK YOUR CALENDARS!

GOOD CUSTOMER SERVICE

MEMBERS IN THE NEWS

WELCOME NEW MEMBERS IN 2006!

HERE'S HOW YOU CAN SUBMIT NEWS TO THE EXCHANGE

**Downloadable Forms**
member news form

This issue sponsored by OMNI Brokerage Inc



## OMNI Brokerage, Inc.

### A LETTER FROM THE FEA PRESIDENT
Dear Fellow FEA Members:

When I originally penned this letter to you, it began:

By the time this publication reaches you, you will probably have heard some rumblings about the proposed and maybe (by then) final **Section 468 B** Regulations.

*However, on Friday, February 3rd, the proposed regulations were issued by the IRS. The proposed Regulations can be read by clicking here. The proposed Regulations are bad for QIs. They require the taxpayer to pay tax on the earnings on the exchange funds. Our Legislative Committee is meeting this Wednesday to formulate a strategy. Our Board will adopt a coordinated approach with our Coalition members to address this issue. As soon as we have developed our plan of attack (and it will be soon) we will communicate the plan to you for your help. Obviously, we are unhappy with this development, but the fight is not over.*

What follows is a brief description of the challenges presented by the 468 B Regulations and the FEA's response to those challenges. The 468 B Proposed Regulations as they relate to Qualified Escrows and Qualified Trusts require a new and different tax treatment of the earnings paid on exchanges. The Regulations would require that all earnings paid on the exchange funds be reported by the Exchanger as income whether some or all of such funds were retained by the QI under the exchange agreement. Even though the effect of this Regulation was highly undesirable, the effect was limited to just Qualified Escrows and Qualified Exchanges. However, the stakes got raised in 2003 by the publication of a letter to the IRS suggesting this treatment should be required of **all** Exchange Transactions. The letter suggested that either the exchange funds were the property of the Taxpayer or the exchange funds represented a loan to the QI. In either case, the letter argued, the Exchanger should pay tax on the entire amount of earnings whether received by the Exchanger or the QI.

Needless to say, the impact of this expanded earnings treatment to all exchanges would have a devastating effect. No Exchanger would let the QI retain earnings on money taxed to the Exchanger but not received by the Exchanger. The FEA and several Board Members sent counter argument letters in 2003. The IRS said they needed no further information and a decision on the 468 B Regs. would be shortly forthcoming. That was over two years ago.

More recently, several of our Board Members were hearing hints that the 468 B Regulations soon would be issued, and that the earnings treatment would be unfavorable to QIs. To meet this challenge, the FEA Board of Directors authorized me to organize a coalition to raise money and hire top accounting people to make counter arguments to the IRS. The firm of Ernst & Young was retained by the coalition to draft a technical response to the previous letter. A reprint of that letter is available **here**. The letter's arguments are well-reasoned and persuasive. Hopefully, our most recent position will be accepted by the IRS and the 468 B Regulations will not be expanded to cover all exchanges. Many thanks to Board Members Radah Butler and Patrick Dowdall who worked a great deal with Ernst & Young in drafting the response. More thanks go to all of the National non-Bank QIs firms,

RICH-E-0065452

our regional member Bayview Financial, and every independent QI firm represented on our Board. Each contributed substantial financial resources to this effort. As soon as we learn of developments we will inform our members. For now, the FEA and its Coalition Members have done everything appropriate to meet this challenge.

Dennis P. Helmick
President

***INCREASE YOUR PROFESSIONAL KNOWLEDGE!
REGISTER FOR THE 2006 ROCKY MOUNTAIN REGIONAL MEETING
SATURDAY, MARCH 11, 2006***
[back to top]

Secure your spot now for the 2006 Rocky Mountain Regional Meeting, this year on Saturday, March 11, 2006. This meeting is scheduled to begin at 8:30 a.m. with a continental breakfast and conclude at 4:00 p.m., followed by a one hour cocktail reception to allow for additional networking with your colleagues. This cocktail reception is being sponsored by Matrix Capital Bank. A total of 6 CES credit hours will be awarded for this program.

The agenda will feature sessions on:

TIC's101 - a real nuts and bolts discussion
Dealer & Inventory
Personal Property
Identification Issues
Federal and State FIRPTA issues
Ethics Roundtable

***HOTEL INFORMATION:***

In order to keep the cost of attendance as low as possible for owners to send a number of employees, FEA has elected to meet by the Denver Airport.

Embassy Suites Hotel Denver International Airport
7002 Yampa Street
Denver, CO 80249
303-574-3000 (Phone)
303.574.9118 (Fax)

**Room Rate**: $109 Double/King Suite (Reserve rooms by February 24!)

**Parking:** Free for day and overnight

Here is what you need to do to register for this meeting:
1. Complete the registration **form** and return it via fax to FEA at 215.564.2175.
2. Contact the Embassy Suites Hotel Denver International Airport at 303-574-3000 and indicate you are a member of FEA to secure accommodations.

For more information about the hotel, or to secure driving directions, please click **here**.

***SUBMIT 2006 ANNUAL DUES PAYMENT IMMEDIATELY!***
[back to top]

PLEASE REMEMBER, MEMBERSHIP DUES FOR 2005 WERE DUE: JANUARY 31, 2006. After that date, non-paying members were charged an additional $100. After March 1, 2006 a company which hasn't paid dues will be dropped off the "Member/QI Locator", lose access to the 'members only' section of the website, and be dropped from FEA's E&O and Fidelity Bond Insurance Programs. There will be a $300 reinstatement charge. Please be sure to submit payment promptly.

***FEA TO PUBLISH MEMBERSHIP DIRECTORY YOUR RESPONSE IS CRITICAL!***
[back to top]

FEA is working to publish a membership directory early in 2006 but we cannot do it without your help. Members have received update forms and we ask that you please return these to FEA as soon as possible! To date, 50% of our members have responded, but we need 100% participation before we can publish this document.

If you are interested in buying an ad for this directory, please review the options by clicking here.

### *APPLY NOW TO TAKE THE CES® EXAM!*
[back to top]

The first CES exam of 2006 will be held after the Mid Year Conference, Saturday May 13 in Philadelphia, PA. Save money by applying early! To learn more about the CES® program visit their website at www.1031ces.org.

**Saturday, May 13, 2006 (Following the FEA Mid-Year Conference):**
[back to top]

> **Philadelphia Downtown Marriott**
> 1201 Market Street
> Philadelphia, PA 19103
> 7:30 am Registration

**Early Bird Discount Deadline:** February 27, 2006

**Application Deadline:** March 23, 2005

### *SPONSORSHIPS STILL AVAILABLE FOR REGIONAL MEETINGS!*
[back to top]

FEA appreciates the support it receives from sponsors and would like to give more members the opportunity to become sponsors. For 2006, FEA has created many more sponsorship activities which will provide members with excellent exposure, both nationally and regionally. To view a full list of these different opportunities, click here!

### *2006 MEETING DATES - MARK YOUR CALENDARS!*
[back to top]

## Regional Meeting Schedule

| | | |
|---|---|---|
| Saturday, March 11 | Rocky Mountains | Embassy Suites Denver International Airport |
| Saturday, April 1 | Northern California | Hilton Garden Inn, San Francisco |
| Friday, June 9 | Midwest | Hilton Garden Inn, Chicago Downtown Magnificent Mile |

## 2006 Mid-Year Conference

| | | |
|---|---|---|
| May 11-12 | Mid-Year Conference | Philadelphia Marriott |



Use this **form** to register for any of the Regional Meetings. Program details for the events will soon be available on the FEA website, under the "Calendar of Events" page.

### *GOOD CUSTOMER SERVICE*
[back to top]

*Submitted by this Newsletter's Sponsor, OMNI Brokerage, Inc.*

RICH-E-0065454

By J. R. Broadbent, a Registered Representative & General Securities Principal of OMNI Brokerage, Inc.

Good Customer Service can be the best way to grow a business (by leading to repeat business and lots of referrals from happy clients!) and to increase job satisfaction (have fun!). This article provides six simple suggestions of good customer service.

To read the full article click here!

## MEMBERS IN THE NEWS
[back to top]

**Security 1031 Services, Inc. and Atlantic Exchange Company, LLC Announce the Acquisition of LKE Solutions, LLC**

**Brewster, NY – December 16, 2005** – Security 1031 Services, Inc. ("SOS1031") and Atlantic Exchange Company, LLC ("AEC") announced the acquisition of LKE Solutions, LLC a Boston, MA based provider of fleet vehicle exchange services under Section 1031 of the Internal Revenue Code. Security 1031 Services based in New York and Atlantic Exchange Company of Boston, MA are national qualified intermediary firms that merged operations in September 2005. LKE Solutions will continue to operate under the trade name of Security 1031 Services Fleet Division ("SOS1031 Fleet").

Hector Sosa, who has supervised the fleet exchange operations for Atlantic Exchange Company, has been promoted to Division Manager of SOS1031 Fleet and will remain headquartered in Boston.

## WELCOME NEW MEMBERS IN 2006!

**Regular:**
EZ1031 Exchange Inc., Los Angeles, CA, www.ez1031exchange.com
1031 Advance, Inc., San Jose, CA, www.1031advance.com

**Affiliate:**
1031 & TIC Investments, Minneapolis, MN, www.1031ticinvest.com
TM 1031 Exchange, Santa Monica, CA, www.tm1031exchange.com
Lamont Financial Service, Novato, CA, www.lamont1031.com

## HERE'S HOW YOU CAN SUBMIT NEWS TO THE EXCHANGE
[back to top]

Do you have any exciting news about your company and/or employees or do you have suggestions for topics to be covered? Please use this form to provide FEA with that information and we would be happy to include that information in a future issue of The Exchange.

Interested is sponsoring an issue of The Exchange? Simply fill out this form and submit it to FEA headquarters.

RICH-E-0065455



**FEDERATION OF EXCHANGE ACCOMMODATORS**

*Rocky Mountain Regional Meeting*
*Advance Registration List*
*As of 3/9/06*

# Active Member

★ = Sponsor

**1031 CORPORATION EXCHANGE PROFESSIONALS**
717 West Fifth Avenue
Longmont, CO 80501
Phone: (888) 367-1031
Fax: (303) 443-0107
    Rosemary L. Albrecht, CES® (Rosemary)
      rosemary@1031cpas.com
    Carol R. Croft, CES® (Carol)
      carol@1031cpas.com
    Mandi L. Henning, CES® (Mandi)
      mandi@1031cpas.com
    Larry Jensen, CPA (Larry)
      larry@1031cpas.com
    Betty L. Marick, CES® (Betty)
      betty@1031cpas.com

**1031X.COM, INC.**
2120 S. Birch St. 300
Denver, CO 80222
Phone: (888) 899-1031
Fax: (303) 715-1012
    Christopher Sayre (Chris)
      csayre@1031x.com

**B P & A HOLDINGS, INC.**
142 North Montezuma, Suite A
Prescott, AZ 86301
Phone: (800) 270-1031
Fax: (928) 778-9361
    Bradley S. Penner, CES® (Brad)
      brad@bpa1031.com

**BANKERS ESCROW CORPORATION**
44 Union Boulevard, #115
Lakewood, CO 80228
Phone: (303) 986-4848
Fax: (303) 986-4761
    Stephen Chacon (Steve)
      stevec@bankersescrow.com
    Mary Lou Schwab, CPA, CES® (Mary Lou)
      marylou@bankersescrow.com

**COLORADO LAND AND EXCHANGE, INC.**
970 Main Avenue
PO Box 3389
Durango, CO 81302
Phone: (970) 247-5464
Fax: (970) 247-0105
    Anna Passalaqua (Anna)
      annap@cltinfo.com

**COONEY & ASSOCIATES, INC.**
1199 Main Avenue, Suite 226
Durango, CO 81301
Phone: (970) 259-2077
Fax: (970) 259-3380
cooney@1031taxinfo.com
    Timothy J. Cooney, CES® (Tim)
      cooney@1031taxinfo.com

**EXCHANGE FACILITATOR CORPORATION**
2627 Eastlake Avenue East
Seattle, WA 98102-3214
Phone: (206) 324-1350
Fax: (206) 329-6801
    Dennis P. Helmick, CES® (Dennis)
      dhelmick@excfac.com

**EXCHANGE FACILITATORS, INC.**
7633 N. Summit Pass
Prescott Valley, AZ 86314
Phone: (928) 759-3209
    Keith T. Burley (Keith)
      kburley1031@Calileone.net

**FIRST AMERICAN EXCHANGE COMPANY**
554 South 300 East, #200
Salt Lake City, UT 84111
Phone: (800) 556-2520
Fax: (866) 669-6105
    Rachel Hansen (Rachel)
      rachensen@firstam.com
554 South 300 East, #200
Salt Lake City, UT 84111
Phone: (801) 944-1031
Fax: (801) 322-8844
    Michael Anderson, CES® (Mike)
      maanderson@firstam.com

RICH-E-1531546

✱ = Sponsor

**INVESTMENT EXCHANGE GROUP, LLC   (HQ)**
600 South Cherry Street Suite 920
Denver, CO  80246
Phone: (303) 331-1031
Fax: (303) 331-8448
   Kenneth E. Garrison (Ken)
   ken.garrison@ixg1031.com
   Chad Greenberg, CES® (Chad)
   chad.greenberg@ixg1031.com
   Andrew McCabe, CES® (Drew)
   drew.mccabe@ixg1031.com
   Daniel E. McCabe, Esq., CES® (Dan)
   dan.mccabe@ixg1031.com
   J. Peter McCann, CES® (Pete)
   pete.mccann@ixg1031.com
   Scott Rodle (Scott)
   shirley.mccabe@ixg1031.com

**INVESTMENT PROPERTY EXCHANGE SERVICES, INC.**
2390 East Camelback Road, #325
Phoenix, AZ  85016
Phone: (602) 224-8818
Fax: (602) 224-8815
   Linda Cary, CES® (Linda)
   licary@fnf.com
   Paula Ripp, CES® (Paula)
   pripp@fnf.com

**LAND TITLE EXCHANGE CORPORATION**
14001 East Iliff Avenue, #500
Aurora, CO  80014
Phone: (303) 636-2660
Fax: (303) 755-7949
   Paul R. Holloway, CES® (Paul)
   pholloway@ltgc.com

**LANDAMERICA EXCHANGE COMPANY**
1099 18th Street, Suite 2850
Denver, CO  80202
Phone: (303) 791-0538
Fax: (303) 791-0798
   Kurt Weber (Kurt)
   kwebber@landam.com

**NATIONAL 1031 EXCHANGE SERVICE LLC**
1790 38th Street, Suite 207
Boulder, CO  80301
Phone: (303) 938-0300
Fax: (866) 893-1031
contact1031@national1031.com
   Debra S. Edwards, CPA, CES® (Debi)
   dsedwards@national1031.com

**NATIONWIDE EXCHANGE SERVICES CORP.**
20400 Stevens Creek Boulevard
Cupertino, CA  95014
Phone: (800) 339-1031
Fax: (408) 286-4373
   Tom Bottenberg (Tom)
   tom@exchanging.com
   Mike Halloran (Mike)

**NORTH AMERICAN EXCHANGE COMPANY**
31646 Broadmoor Drive
Evergreen, CO 80439
Phone: (303) 319-5937
Fax: (800) 736-1031
   Mark Nierenberg (Mark)
   mark@naexchange.com

**SPECTRUM EXCHANGE CORP.**
50 Bell Rock Plaza
Sedona, AZ  86351
Phone: (928) 284-9840
Fax: (928) 284-1478
   Dawna Westberg (Dawna)

**T W EXCHANGE, INC.**
727 North 1550 East
Suite 150
Orem, UT  84097
Phone: (801) 375-2122
Fax: (801) 343-2162
   Summer Evans (Summer)
   sevans@titlewest.com

**THE TEXAS 1031 EXCHANGE CO.**
175 South Seguin
New Braunfels, TX  78130
Phone: (800) 839-1031
Fax: (830) 625-1031
wayne@texas1031.com
   Wayne Roitsch (Wayne)
   wayne@texas1031.com

RICH-E-1531547

✷ = Sponsor

# Affiliate

**1031 & TIC INVESTMENTS, LLC** ✷
310 4th Avenue South, #1100
Minneapolis, MN 55415
Phone: (800) 454-1031
Fax: (612) 253-1145
    Dan Werry (Dan)
        dwerry@1031ticinvest.com

**1031 PROPERTY WATCH, INC. (AFFILIATE)** ✷
11616 South State Street, #1503
Salt Lake City, UT 84020
Phone: (877) 337-1031
Fax: (801) 523-8972
    John Temple (John)
        john@1031propertywatch.com
    Sarah West (Sarah)
        sarah@1031propertywatch.com

**ARGUS REALTY INVESTORS, LP (AFFILIATE)** ✷
205 Avenida Fabricante, 2nd Floor
San Clemente, CA 92675
Phone: (877) 366-1031
Fax: (949) 481-6748
    Jean Pierre LaBarrie (Jean Pierre)
        ehardy@argusrealty.com
    Todd Williams (Todd)
        twilliams@argusrealty.com

**CAPHARBOR, INC.- (AFFILIATE)** ✷
8447 Wilshire Blvd., Ste. 100
Beverly Hills, CA 90211
Phone: (877)886-1031
Fax: (323) 653-6233
    Katie Jansen (Katie)
        kjansen@capharbor.com

**FOR1031 LLC (AFFILIATE)**
1401 W. 122nd Avenue
Westminster, CO 80234
Phone: (208)-287-1800
Fax: (208) 287-1801
    Frank Hopkins (Frank)
        fhopkins@for1031.com

**MATRIX CAPITAL BANK (AFFILIATE)** ✷
700 17th Street, Suite 100
Denver, CO 80220
Phone: (720) 956-6573
Fax: (720) 346-1117
jthornton@matrixbancorp.com
    Tammy Campbell (Tammy)
    Tom Goodloe (Tom)
        thomasg@matrixbancorp.com
    Judy Thornton (Judy)
        jthornton@matrixbancorp.com

**NASHBAR WEALTH SERVICES, LLC**
100 Deerpath Court
Oldsmar, FL 34677
Phone: (727) 415-6739
Fax: (727) 786-2886
    Kevin Nashbar (Kevin)
        knashbar@gunnallen.com

**OMNI BROKERAGE, INC. (AFFILIATE)**
10542 South Jordan Gateway, Suite 330
Salt Lake City, UT 84095
Phone: (801) 553-1031
Fax: (801) 501-0313
    Jeremy Brown (Jeremy)
        jbrown@omni1031.com

**SCI REAL ESTATE INVESTMENTS (AFFILIATE)** ✷
11620 Wilshire Boulevard #300
Los Angeles, CA 90025
Phone: (310) 470-2600
Fax: (310) 470-6609
    Andrew Lifzyc (Andrew)
        alifzyc@sciproperties.com
    Lewis Savage (Lew)
        lsavage@sciproperties.com

RICH-E-1531548

# Non-Member

**1031TAX.COM**
7900 E. Union Ave.
Suite 1014
Denver, CO 80237
Phone: (303) 217-4888
Fax: (866) 288-0837
alan@1031tax.com
Alan Fruitman (Alan)
alan@1031tax.com

**ACCRUIT, LLC**
445 Union Blvd.
Suite 223
Lakewood, CO 80228
Phone: (720) 963-5000
Fax: (720) 963-0116
Brent Abrahm (Brent)
brenta@accruit.com

**ACQUIRON** ✳
PO BOX 748
Denver, CO 80202
Phone: (888) 569-7031
Fax: (888) 591-1031
jvail@weltonstreet.com
Josh Vail (Josh)
jval@weltonstreet.com

**WELTON STREET** ✳
518 17th Street
Denver, CO 80202
Phone: (888) 569-1031
Fax: (888) 591-1031
jvail@weltontreet.com
Brian Tanner (Brian)
jvail@weltonstreet.com

# Staff

**FEDERATION OF EXCHANGE ACCOMMODATORS**
100 N. 20th Street
4th Floor
Philadelphia, PA 19103-1443
Phone: (215) 564-3484
Fax: (215) 564-2175
Kathryn E. Gifford (Katie)
kgifford@fernley.com
1127 11th Street
Suite 1003
Sacramento, CA 95814-3811
Phone: (916) 444-5433
Tim Egan (Tim)
caprep@earthlink.net

RICH-E-1531549

| | |
|---|---|
| **From:** | Marga Shefman [Marga@1031taxsavers.com] |
| **Sent:** | Friday, July 28, 2006 10:46 AM |
| **To:** | Lara Coleman |
| **Subject:** | FW: Sponsorship Opportunities at the FEA Annual Conference! |

**Attachments:**    image006.gif; image002.gif; image004.gif; image003.gif; image004.gif

        

image006.gif  image002.gif  image004.gif  image003.gif  image004.gif

Marga R. Shefman

*MATRIX & FEA*

Real Estate Exchange Services, Inc.

802 2nd Street North, Suite A

PO Box 1716

Safety Harbor, Florida 34695

Tel. 727-726-1883 / Fax 727-726-1863

Toll Free 877-535-1031

Marga@1031taxsavers.com

www.1031taxsavers.com <http://www.1031taxsavers.com/>

CONFIDENTIALITY NOTICE: This E-Mail is intended only for the use of the individual or
entity to which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If you have received this
communication in error, please do not distribute it. Please notify the sender by E-Mail at
the address shown and delete the original message. Thank you.

From: FEA [mailto:FEA@fernley.com]
Sent: Thursday, July 27, 2006 4:45 PM
Subject: Sponsorship Opportunities at the FEA Annual Conference!

The Federation of Exchange Accommodators' 12th Annual National Conference is right around

1

RICH-E-0120364

the corner — scheduled for October 13 and 14,
2006 at Bally's Las Vegas. If you were able to attend last year's Conference, you know
that we had one of the largest gatherings ever for an FEA meeting. Due to the continued
growth in the membership of FEA over the last year and the quality of this year's
Conference program, we anticipate another increase in attendance for the Conference. The
following companies have already signed up as sponsors:

1031 & TIC Investments

1031 Property Watch

Accredited Solutions

Argus Realty Investors

Commerce Bank

Matrix Capital Bank

OMNI Brokerage

SCI Properties

TM 1031 Exchange, Inc.

Upland Real Estate Group, Inc.


In order to  improve the overall value of a sponsorship for your company and to provide
the maximum exposure and opportunity for your company to establish or further develop
existing contacts with members of FEA, we have created the following Sponsorship
categories:


Platinum Sponsorship— $11,000

*        Recognition as Platinum Sponsor on all program materials and
Conference mailings

*        Best position and size on sponsorship page in Conference
Handbook to include company logo, contact information, and full page b/w ad.

*        Exhibit Booth

*        Recognition at the Friday Evening Cocktail Reception and
Friday Luncheon. A company representative will be allowed up to two minutes to present
their company in front of the Conference attendees during the luncheon.

*        Co-Sponsor of the Friday Evening Cocktail Reception

*        List of Early Registration Attendees

*        Three complimentary delegate registrations for Annual
Conference.


Gold Sponsorship— $5,500

*        Recognition as a "Gold" Sponsor on all program materials and
Conference mailings

*        Second best position and size on sponsorship page in

RICH-E-0120365

Conference Handbook to include company logo and contact information

\*        Recognition at Friday Evening Cocktail Reception and Saturday
Luncheon.

\*        Co-Sponsor of the Friday Ice Cram Break.

\*        Exhibit Booth

\*        Two complimentary delegate registrations for Annual
Conference.


Silver Sponsorship- $3,000

\*        Recognition as Silver Sponsor on all program materials and
Conference mailings

\*        Third best position and size on sponsorship page in
Conference Handbook to include company logo

\*        Exhibit Booth

\*        Recognition at Friday Evening Cocktail Reception.

\*        One complimentary delegate registration for Annual
Conference.

Explosion 1: NEW!


Additional Sponsorship Opportunities



First Come, First Served!


Badge Holders, $4,500:

\*        Have your company's logo proudly displayed on every delegate'
s badge!

\*        Nylon badge holder comes with an extra pocket to store a
hotel key, money, and identification.

\*        This badge holder also has a pen slot. Feel free to supply
your own pens before the Conference and we'll make sure they are in everyone's badge
holder!

\*        Sponsorship also includes an exhibit booth and one
complimentary delegate registration for the Annual Conference.


Messenger/Laptop Bags, $8,000:

\*        Delegates will be given this bag at registration to
conveniently carry their speaker books during the meeting.

3

RICH-E-0120366

\*        Have your logo displayed on the front flap and every time the
bag is opened people will be reminded of your company! These bags are sure to be used long
after the Conference is over.

\*        Sponsorship also includes an exhibit booth and two
complimentary delegate registrations for the Annual Conference.


Internet Café, $11,000:

\*        Computer stations will be set up in the Conference area and
attendees will have the option to check their email anytime!

\*        Your company logo will be displayed and promoted throughout
the Conference area. You will also be promoted in all Conference Materials.

\*        Best position and size on sponsorship page in Conference
Handbook to include company logo, contact information, and full page b/w ad.

\*        Sponsorship also includes an exhibit booth and three
complimentary delegate registrations for the Annual Conference.


Speaker Binder, $11,000:

\*        Your Company logo will be displayed on the front of the
binder, while the back of the binder gives you an opportunity to have a full-page ad.

\*        Your logo will also be placed on the spine of the binder. Not
only will these binders be used during the Conference, but they are a valuable resource
which all delegates keep. These binders are an excellent reference for members and you can
be sure they will be displayed and utilized quite frequently!

\*        Sponsorship also includes an exhibit booth and three
complimentary delegate registrations for the Annual Conference.



If you are interested in becoming a sponsor please fill out the attached form and submit
it to FEA Headquarters (100 N. 20th Street, 4th Floor, Philadelphia, PA 19103).

4

RICH-E-0120367